ORIGINAL

E-filing

1  Robert P. Feldman (Bar No. 69602)
   bobfeldman@quinnemanuel.com
2  Linda J. Brewer (Bar No. 217730)
   lindabrewer@quinnemanuel.com
3  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   555 Twin Dolphin Drive, 5th Floor
4  Redwood Shores, CA  94065
   Telephone: (650) 801-5000
5  Facsimile: (650) 801-5100

6  Frederick A. Lorig (Bar No. 57645)
   fredericklorig@quinnemanuel.com
7  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   865 S. Figueroa Street, 10th Floor
8  Los Angeles, CA  90017
   Telephone: (213) 443-3000
9  Facsimile: (213) 443-3100

10 *ATTORNEYS FOR PLAINTIFF*
   *INTERTRUST TECHNOLOGIES CORPORATION*

11

FILED

MAR 20 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14

15  INTERTRUST TECHNOLOGIES              CASE NO. **C13-1235**
    CORPORATION, a Delaware corporation,
16
               Plaintiff,               **COMPLAINT FOR PATENT**
17                                       **INFRINGEMENT**
        vs.
18                                       **JURY TRIAL DEMANDED**
    APPLE INC., a California corporation,
19
               Defendant.
20

21          **COMPLAINT FOR PATENT INFRINGEMENT**

22      Plaintiff Intertrust Technologies Corporation ("Intertrust" or "Plaintiff"), by and through its

23  undersigned counsel, complains and alleges as follows against Apple Inc. ("Apple" or "Defendant"):

24                      **THE PARTIES**

25      1.      Intertrust is a corporation organized under the laws of the State of Delaware, with its

26  principal place of business at 920 Stewart Drive, Sunnyvale, California 94085.

27

28

2.      On information and belief, Apple is a corporation organized under the laws of the State of California, with its principal place of business located at 1 Infinite Loop, Cupertino, California 95014.

### NATURE OF THE ACTION

3.      This is a civil action for patent infringement.

4.      Apple has infringed and continues to infringe, contributed to and continues to contribute to the infringement of, and/or actively induced and continues to induce others to infringe Intertrust's U.S. Patent No. 5,892,900 ("the '900 patent"), U.S. Patent No. 5,915,019 ("the '019 patent"), U.S. Patent No. 5,917,912 ("the '912 patent"), U.S. Patent No. 5,920,861 ("the '861 patent"), U.S. Patent No. 5,949,876 ("the '876 patent"), U.S. Patent No. 5,982,891 ("the '891 patent"), U.S. Patent No. 6,112,181 ("the '181 patent"), U.S. Patent No. 6,157,721 ("the '721 patent"), U.S. Patent No. 6,185,683 ("the '683 patent"), U.S. Patent No. 6,253,193 ("the '193 patent"), U.S. Patent No. 7,392,395 ("the '395 patent"), U.S. Patent No. 7,734,553 ("the '553 patent"), U.S. Patent No. 7,761,916 ("the '916 patent"), U.S. Patent No. 8,191,157 ("the '157 patent"), and U.S. Patent No. 8,191,158 ("the '158 patent") (collectively, "the Asserted Patents"). Intertrust is the legal owner by assignment of the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office. Plaintiff seeks injunctive relief and monetary damages.

### INTRADISTRICT ASSIGNMENT

5.      Pursuant to Civil L.R. 3-2(c), this case is appropriate for assignment on a district-wide basis because this is an Intellectual Property Action.

6.      The patents in this suit were asserted in earlier actions presided over by the Honorable Saundra Brown Armstrong of the Oakland Division, or are continuations with the same specification as the patents that were at issue in *Intertrust Technologies Corp. v. Microsoft Corp.*, Nos. 01-cv-1640-SBA and 02-cv-0647-SBA (collectively, the "*Microsoft* actions"). In the *Microsoft* actions, Judge Armstrong issued a claim construction order that construed claim terms from the patents in this suit.

## JURISDICTION AND VENUE

7.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

8.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.      Apple is subject to this Court's personal jurisdiction.

(i)      Apple is incorporated and has its principal place of business in the Northern District of California, has commenced litigation in this District, and has conducted and continues to conduct business in this District.

(ii)      Apple has infringed Intertrust's patents in the Northern District of California by, among other things, engaging in infringing conduct within and directed at this District. For example, Apple maintains its principal place of business and numerous retail stores in this District, and has purposefully and voluntarily placed one or more of its infringing products, as described below in Counts I through XV, into the stream of commerce with the expectation that these infringing products will be used in this District. These infringing products have been and continue to be used in this District.

(iii)      Apple has availed itself of the jurisdiction of this Court by filing complaints for patent infringement in the Northern District of California, including, for example, *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-cv-1846-LHK.

10.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Apple does business in the Northern District of California, has committed acts of infringement in this District, has a regular and established place of business in this District, and is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### Intertrust's History and Innovations

11.      Intertrust was founded in 1990 by Victor Shear and has pioneered a series of trusted computing technologies (including, but not limited to, digital rights management ("DRM")

technologies that serve to protect copyrighted works from unlawful copying) that have set the benchmark for trusted interactions in digital ecosystems.

12.    Intertrust's innovations have contributed to a global standard for DRM and interoperability, Marlin DRM. The Marlin standard can be used to provide a simple and consistent digital entertainment experience across a broad set of consumer electronics devices and services.

13.    Intertrust has also developed a corresponding suite of software development kits ("SDKs") and services for trusted media asset distribution, including Marlin Client and Server SDKs, Seacert Trust Services, and the Sockeye Cryptography SDK. Content publishers, service providers, device makers, application developers, and system-on-a-chip vendors use Intertrust's Marlin and Sockeye SDKs and Seacert Services to build innovative and personalized content distribution products and services for mobile devices, broadband, and Internet TV.

14.    Today, Intertrust's culture of innovation continues. With its headquarters in Silicon Valley, regional offices in London and Beijing, and representatives in Tokyo and Seoul, Intertrust focuses on research and development of new technologies in the areas of electronic trust management, privacy protection, and Internet user behavior analysis.

**Intertrust's Asserted Patents**

15.    The trusted computing technologies embodied in Intertrust's patents underpin the security and data management components of mobile devices, including smartphones, tablet computers and other portable devices, web services, personal computers, Internet connected TVs, and secure enterprise automation platforms, among other products, systems, and services.

16.    Modern mobile devices and computers rely heavily on programs or applications (frequently referred to as "apps"), copyrighted multimedia content, and the Internet. These types of content present complicated problems with respect to computer security (for example, protection from viruses, Trojan horses, and malware); secure transaction management (for example, protecting a user's mobile device account from being hijacked or misused); and electronic rights protection (for example, allowing a user to share protected content among the user's own mobile devices and computers, but not with the mobile devices and computers of others).

COMPLAINT FOR PATENT INFRINGEMENT

17.     Intertrust was, and continues to be, a pioneer in developing innovative and sophisticated solutions to address these and other security concerns.  The Asserted Patents are a product of Intertrust's research and development in the field of computer and mobile device security.  The Asserted Patents reflect groundbreaking innovations in computer security and rights control that are found in modern computers and mobile devices.

18.     Intertrust recognized early on that application-level security solutions could, in many cases, prove insufficient.  Sophisticated hackers could seek to infiltrate a computer or mobile device at a more fundamental level, for example, by targeting physical or virtual memory, or even by physically tampering with a computer or mobile device's hardware.  Several of the Asserted Patents claim integrated security solutions that increase the tamper resistance of a computer or mobile device.  The innovations embodied in these patents create a secure computing environment that enables components requiring special security measures (for example, applications, copyrighted content, and confidential information) to be used with confidence.

19.     Intertrust also pioneered the use of security barriers and permissions to isolate applications and other executables within a computing system.  As explained earlier in this Complaint, the ubiquity of applications presents unique and serious security issues in computer and mobile devices, especially those that operate on open operating systems and transmit information over open networks, such as the Internet.  In an unsecure processing environment, a single malicious application can wreak havoc throughout the entire computing system.  Several of the Asserted Patents claim, among other things, secure processing environments that limit the ability of "rogue" programs or processes to spread to the rest of the device.  By creating a barrier between different applications that may have different security levels, damage from a malicious or badly-written application to a computing system, including to other applications and to the operating system, can be limited.

20.     Intertrust pioneered the use of integrated, distributed security controls for a heavily-networked world.  Security controls that focus on a single device or computing system may be insufficient in today's environment where distributed computing is prevalent and where a single user, family, or business may share electronic content between different computers and mobile devices.

For example, a single user may have a smartphone, a tablet computer, a laptop computer, and a desktop computer, and may wish to transfer, store, and/or use the same protected digital content on some or all of these devices.  At the same time, the user (or the content provider, distributor, or enterprise administrator) may wish to retain control over this digital content so that it can be used on all of a particular user's devices, but not be used on the devices of a different user.  In the home or business context, a parent or employer may wish to remotely provide specific security or content controls to a device or computer in addition to content-based encryption or DRM.  The Asserted Patents claim richly customizable and transferable security and content rules and controls that allow for content to be securely shared, transferred, sold, and/or used on a variety of networked computers and mobile devices.

21.     Leading global electronics manufacturers, service providers, and enterprise software platform companies have recognized Intertrust's innovations through licensing of the Asserted Patents, including a number of Apple's primary competitors such as, but not limited to, Microsoft, Samsung, Nokia, Motorola, HTC, LG, Sony, Panasonic, Philips, Adobe, and Sharp.

22.     Products licensed under the Asserted Patents have been sold and are sold in substantial quantities throughout the United States and directly compete with Apple's products.  Unlike Intertrust's licensees, however, Apple has not licensed the Asserted Patents, even though Apple's use of these innovations is critical to the commercial success of its products.  Apple's decision to free-ride off Intertrust's innovations has caused, and continues to cause, substantial harm to Intertrust.

23.     Apple has made use of Intertrust's foundational innovations despite knowing, before the filing of this Complaint, that many of Intertrust's patents cover such innovations.  Apple is aware, for example, that Intertrust brought suits against Microsoft (the *Microsoft* actions) for infringement of certain of the Asserted Patents, among others.  In the *Microsoft* actions, the Honorable Saundra Brown Armstrong construed a number of claim terms found in the Asserted Patents.  *See Intertrust Techs. Corp. v. Microsoft Corp.*, 275 F. Supp. 2d 1031 (N.D. Cal. 2003).  After Judge Armstrong issued claim construction rulings, Microsoft agreed to settle the *Microsoft* actions, licensing the Asserted Patents, among others, from Intertrust in 2004 for $440 million.  Apple is aware of the existence of the license between Intertrust and Microsoft and the $440 million that Microsoft paid

1   pursuant to that license. Moreover, as more specifically alleged hereinafter, Apple was put on notice

2   of its infringement of most of the Asserted Patents. However, Apple's knowledge of certain of the

3   Asserted Patents, the *Microsoft* actions, and the fact that a number of its other competitors have

4   licensed Intertrust's patents, did not deter Apple's willful infringement of Intertrust's intellectual

5   property, as alleged herein.

6   **Apple's Infringing Technologies**

7   24.    Apple uses Intertrust's patented technologies at virtually every level of its consumer

8   electronics enterprise including its operating systems, devices, applications, application trust

9   infrastructure, and several of its profitable and strategically important services and capabilities

10  ranging from its iTunes content services to capabilities supporting enterprise device and application

11  deployment and management. Additionally, Apple's use of Intertrust technologies is central to its

12  trust management infrastructure for applications that enforce its vertically integrated business model,

13  well known in the industry to provide significant commercial advantages. This trust management

14  infrastructure allows Apple to provide security for applications that run on its devices and it also

15  allows Apple to control and extract value from an entire ecosystem of software suppliers. No other

16  entity uses Intertrust technologies so extensively at so many levels of its enterprise.

17  25.    Apple's mobile devices, which include the iPhone, the iPod touch, and the iPad

18  product lines, are built upon secure computing technologies developed and patented by Intertrust,

19  including hardware-based security solutions and code-level security solutions that underpin Apple's

20  mobile device operating system, iOS. Apple's infringement of Intertrust's patents has expanded with

21  each new generation of iOS and each new generation of its mobile devices. For example, Apple's

22  most recent mobile device offerings, the iPhone 5, iPod touch 5, iPad 4, and iPad mini, incorporate

23  technology from the Asserted Patents at every level of operation, including security technologies

24  used in application development and execution.

25  26.    As with Apple's mobile devices, Apple's desktop and laptop computing devices, which

26  include the MacBook Air, MacBook Pro, Mac mini, iMac, and Mac Pro product lines, are also built

27  upon secure computing technologies that Intertrust developed and patented, including code-level

28  security solutions that underpin Apple's OS X operating system. Apple's infringement of Intertrust's

patented technology has expanded with each new generation of OS X and each new generation of its Mac desktop and laptop computers. For example, the security technologies that Intertrust developed and patented underpin application programming, development, and execution at a fundamental level in recent versions of Apple's OS X operating systems, including OS X 10.7 ("Lion") and OS X 10.8 ("Mountain Lion").

27.     In addition to licensing its patents, Intertrust sells and licenses its own DRM and security systems and solutions. Intertrust has developed, deployed, and licensed secure computing technologies that provide the tools to enable trusted computing environments such as those that Apple has deployed in connection with its iOS and OS X operating systems, and its iTunes platform that delivers protected digital content, including movies, to devices that run on different operating systems developed by Apple, as well as on Microsoft Windows-based personal computers.

28.     In designing its iOS and OS X operating systems and devices, and its iTunes platform, Apple could have licensed Intertrust's technology. Instead, with knowledge of the Asserted Patents, as hereinafter alleged, and the publicity surrounding the license of the Asserted Patents to Microsoft that resulted from the *Microsoft* actions, Apple chose to infringe the Asserted Patents despite Intertrust's repeated attempts to license its patents to Apple.

**Apple's Use of Intertrust's Patented Inventions Harms Intertrust and Its Licensees**

29.     Apple has not simply used Intertrust's patented technologies without a license; it has used these patented technologies, as embodied in the Asserted Patents, to create and maintain a safe and secure ecosystem protected by, and whose value is in part derived from, Intertrust's patented technologies.

30.     Apple has profited immensely through the use of Intertrust's patented technologies to develop a trusted—and closed—platform for the development, distribution, and use of applications, music, games, videos, movies and books that can be downloaded to its products. Apple's use of Intertrust's patented technologies has greatly enhanced Apple's competitive position in the marketplace and enabled it to reap enormous profits.

31.     The security provided to Apple's ecosystem as a result of its infringement of Intertrust patents has enabled Apple to achieve tremendous success in the sales of hardware and

1    the distribution of applications, books, movies, video, games and music for that hardware.

2    Intertrust's secure computing technologies have made it possible for Apple to distribute

3    applications to customers without fear that these applications will corrupt their Apple devices or

4    abscond with their private information.  This sense of security has led to Apple's recent

5    announcement on January 7, 2013 that "customers have downloaded over 40 billion apps[], with

6    nearly 20 billion in 2012 alone.  The App Store[SM] has over 500 million active accounts and had a

7    record-breaking December with over two billion downloads during the month.  Apple's incredible

8    developer community has created over 775,000 apps for iPhone[®], iPad[®] and iPod touch[®] users

9    worldwide, and developers have been paid over seven billion dollars by Apple."  Intertrust is

10   informed and believes that Apple retains approximately 30% of revenues from these applications,

11   and a similar high percentage for videos, music, and books downloaded using its iTunes Store

12   and iBookstore.  Apple's vibrant app ecosystem, which depends in large part on consumers'

13   comfort to make impulse purchases, is the direct result of Apple's unauthorized use of Intertrust's

14   innovations.

15        32.     Apple also infringes Intertrust's patents to ensure that DRM-constrained multimedia

16   content downloaded from the iTunes Store or iBookstore can only be accessed on Apple's devices

17   and computers that run on Apple's proprietary iOS, OS X, and derivative operating systems.

18                                        **COUNT I**

19            **(Apple's Infringement of U.S. Patent No. 5,892,900)**

20        33.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1

21   through 32 of this Complaint as if fully set forth herein.

22        34.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in

23   and to U.S. Patent No. 5,892,900 ("the '900 patent"), titled "Systems And Methods For Secure

24   Transaction Management And Electronic Rights Protection," duly and legally issued by the United

25   States Patent and Trademark Office on April 6, 1999, including the right to bring this suit for

26   injunctive relief and damages.  A true and correct copy of the '900 patent is attached hereto as Exhibit

27   1.

28        35.     The '900 patent is valid and enforceable.

COMPLAINT FOR PATENT INFRINGEMENT

36.     Apple has infringed and is currently infringing the '900 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods, equipment, and/or services that practice one or more claims of the '900 patent, including but not limited to Apple's iPhone, iPad, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini, iMac, and Mac Pro products (collectively, "the '900 Accused Products").

37.     Apple has had actual knowledge of both Intertrust's rights in the '900 patent and details of Apple's infringement of the '900 patent because Intertrust brought the '900 patent to Apple's attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust licensed the '900 patent, among others, to Microsoft in 2004 as part of a $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

38.     Notwithstanding Apple's actual notice of infringement, Apple has continued to manufacture, use, import, offer for sale, or sell the '900 Accused Products with knowledge of or willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '900 patent.  Apple has induced and continues to induce others to infringe the '900 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '900 patent with intent that those performing the acts infringe the '900 patent. Upon information and belief, Apple advertises regarding the '900 Accused Products, publishes specifications and promotional literature describing the operation of the '900 Accused Products, creates and/or distributes user manuals for the '900 Accused Products, and offers support and technical assistance to its customers.  Consumers of these products then directly or jointly infringe the '900 patent.

39.     Apple knows that the '900 Accused Products are especially made or especially adapted for use in the infringement of the '900 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '900 patent. Accordingly, Apple is also contributing to the direct infringement of the '900 patent by the consumers of these products.

40.     Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '900 patent.

41.     By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Apple's infringement of the '900 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '900 patent to Apple so that Apple could implement these products and services.  As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '900 patent.

42.     Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

43.     Apple's infringement of the '900 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

44.     Apple's infringement of the '900 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

### (Apple's Infringement of U.S. Patent No. 5,915,019)

45.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

46.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 5,915,019 ("the '019 patent"), titled "Systems And Methods For Secure Transaction Management And Electronic Rights Protection," duly and legally issued by the United States Patent and Trademark Office on June 22, 1999, including the right to bring this suit for

injunctive relief and damages. A true and correct copy of the caption page and claims of the '019 patent is attached hereto as Exhibit 2. The '019 patent is related to the '900 patent, a complete copy of which is attached hereto as Exhibit 1. A complete copy of the '019 patent can be made available to the Court upon request. In addition, a complete copy of the '019 patent will be served on Apple along with this Complaint.

47. The '019 patent is valid and enforceable.

48. Apple has infringed and is currently infringing the '019 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods, equipment, and/or services that practice one or more claims of the '019 patent, including but not limited to Apple's iPhone, iPad, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini, iMac and Mac Pro products, as well as Apple's iTunes Store, iOS App Store and Mac App Store software applications and/or services (collectively, "the '019 Accused Products").

49. Apple has had actual knowledge of both Intertrust's rights in the '019 patent and details of Apple's infringement of the '019 patent because Intertrust brought the '019 patent to Apple's attention before the filing date of this Complaint. In addition, Apple is also aware that Intertrust licensed the '019 patent, among others, to Microsoft in 2004 as part of a $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

50. Notwithstanding Apple's actual notice of infringement, Apple has continued to manufacture, use, import, offer for sale, or sell the '019 Accused Products with knowledge of or willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '019 patent. Apple has induced and continues to induce others to infringe the '019 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '019 patent with intent that those performing the acts infringe the '019 patent. Upon information and belief, Apple advertises regarding the '019 Accused Products, publishes specifications and promotional literature describing the operation of the '019 Accused Products, creates and/or distributes user manuals for the '019 Accused Products, and offers support and technical assistance to its customers. Consumers of these products then directly or jointly infringe the '019 patent.

51.     Apple knows that the '019 Accused Products are especially made or especially adapted for use in the infringement of the '019 patent. The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '019 patent. Accordingly, Apple is also contributing to the direct infringement of the '019 patent by the consumers of these products.

52.     Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '019 patent.

53.     By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. But for Apple's infringement of the '019 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '019 patent to Apple so that Apple could implement these products and services. As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '019 patent.

54.     Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue. The public interest would be served by issuance of an injunction.

55.     Apple's infringement of the '019 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

56.     Apple's infringement of the '019 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

1

## COUNT III

2

**(Apple's Infringement of U.S. Patent No. 5,917,912)**

3      57.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1

4   through 32 of this Complaint as if fully set forth herein.

5      58.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in

6   and to U.S. Patent No. 5,917,912 ("the '912 patent"), titled "System And Methods For Secure

7   Transaction Management And Electronic Rights Protection," duly and legally issued by the United

8   States Patent and Trademark Office on June 29, 1999, including the right to bring this suit for

9   injunctive relief and damages.  A true and correct copy of the caption page and claims of the '912

10  patent is attached hereto as Exhibit 3.  The '912 patent is related to the '900 patent, a complete copy

11  of which is attached hereto as Exhibit 1.  A complete copy of the '912 patent can be made available to

12  the Court upon request.  In addition, a complete copy of the '912 patent will be served on Apple along

13  with this Complaint.

14      59.     The '912 patent is valid and enforceable.

15      60.     Apple has infringed and is currently infringing the '912 patent by making, using,

16  selling, offering for sale, and/or importing into the United States, without authority, products,

17  methods, equipment, and/or services that practice one or more claims of the '912 patent, including but

18  not limited to Apple's iPhone, iPad, and iPod touch products (collectively, "the '912 Accused

19  Products").

20      61.     Apple has had actual knowledge of both Intertrust's rights in the '912 patent and

21  details of Apple's infringement of the '912 patent because Intertrust brought the '912 patent to Apple's

22  attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust

23  licensed the '912 patent, among others, to Microsoft in 2004 as part of a $440 million licensing

24  agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

25      62.     Notwithstanding Apple's actual notice of infringement, Apple has continued to

26  manufacture, use, import, offer for sale, or sell the '912 Accused Products with knowledge of or

27  willful blindness to the fact that its actions will induce Apple's customers and end users to infringe

28  the '912 patent.  Apple has induced and continues to induce others to infringe the '912 patent in

violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '912 patent with intent that those performing the acts infringe the '912 patent. Upon information and belief, Apple advertises regarding the '912 Accused Products, publishes specifications and promotional literature describing the operation of the '912 Accused Products, creates and/or distributes user manuals for the '912 Accused Products, and offers support and technical assistance to its customers. Consumers of these products then directly or jointly infringe the '912 patent.

63. Apple knows that the '912 Accused Products are especially made or especially adapted for use in the infringement of the '912 patent. The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '912 patent. Accordingly, Apple is also contributing to the direct infringement of the '912 patent by the consumers of these products.

64. Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '912 patent.

65. By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. But for Apple's infringement of the '912 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '912 patent to Apple so that Apple could implement these products and services. As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '912 patent.

66. Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court. The

1  hardships that an injunction would impose are less than those faced by Intertrust should an injunction

2  not issue.  The public interest would be served by issuance of an injunction.

3        67.    Apple's infringement of the '912 patent has been and continues to be willful and

4  deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

5        68.    Apple's infringement of the '912 patent is exceptional and entitles Intertrust to

6  attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

7  **COUNT IV**

8  **(Apple's Infringement of U.S. Patent No. 5,920,861)**

9        69.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1

10  through 32 of this Complaint as if fully set forth herein.

11        70.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in

12  and to U.S. Patent No. 5,920,861 ("the '861 patent"), titled "Techniques For Defining Using And

13  Manipulating Rights Management Data Structures," duly and legally issued by the United States

14  Patent and Trademark Office on July 6, 1999, including the right to bring this suit for injunctive relief

15  and damages.  A true and correct copy of the '861 patent is attached hereto as Exhibit 4.

16        71.    The '861 patent is valid and enforceable.

17        72.    Apple has infringed and is currently infringing the '861 patent by making, using,

18  selling, offering for sale, and/or importing into the United States, without authority, products,

19  methods, equipment, and/or services that practice one or more claims of the '861 patent, including but

20  not limited to Apple's iPhone, iPad, iPod touch, iPod, Apple TV, MacBook Air, MacBook Pro, Mac

21  mini, iMac and Mac Pro products, as well as Apple's iTunes Store, iBookstore, iOS App Store, Mac

22  App Store, and Xcode software applications and/or services (collectively, "the '861 Accused

23  Products").

24        73.    Apple has had actual knowledge of both Intertrust's rights in the '861 patent and

25  details of Apple's infringement of the '861 patent because Intertrust brought the '861 patent to Apple's

26  attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust

27  licensed the '861 patent, among others, to Microsoft in 2004 as part of a $440 million licensing

28  agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

74.     Notwithstanding Apple's actual notice of infringement, Apple has continued to manufacture, use, import, offer for sale, or sell the '861 Accused Products with knowledge of or willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '861 patent.  Apple has induced and continues to induce others to infringe the '861 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '861 patent with intent that those performing the acts infringe the '861 patent.  Upon information and belief, Apple advertises regarding the '861 Accused Products, publishes specifications and promotional literature describing the operation of the '861 Accused Products, creates and/or distributes user manuals for the '861 Accused Products, and offers support and technical assistance to its customers.  Consumers of these products then directly or jointly infringe the '861 patent.

75.     Apple knows that the '861 Accused Products are especially made or especially adapted for use in the infringement of the '861 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '861 patent.  Accordingly, Apple is also contributing to the direct infringement of the '861 patent by the consumers of these products.

76.     Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '861 patent.

77.     By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Apple's infringement of the '861 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '861 patent to Apple so that Apple could implement these products and services.  As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '861 patent.

78.     Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

79.     Apple's infringement of the '861 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

80.     Apple's infringement of the '861 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V

### (Apple's Infringement of U.S. Patent No. 5,949,876)

81.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

82.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 5,949,876 ("the '876 patent"), titled "Techniques For Defining Using And Manipulating Rights Management Data Structures," duly and legally issued by the United States Patent and Trademark Office on September 7, 1999, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the caption page and claims of the '876 patent is attached hereto as Exhibit 5.  The '876 patent is related to the '900 patent, a complete copy of which is attached hereto as Exhibit 1.  A complete copy of the '876 patent can be made available to the Court upon request.  In addition, a complete copy of the '876 patent will be served on Apple along with this Complaint.

83.     The '876 patent is valid and enforceable.

84.     Apple has infringed and is currently infringing the '876 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods, equipment, and/or services that practice one or more claims of the '876 patent, including but not limited Apple's iTunes Store software applications and/or services (collectively, "the '876 Accused Products").

85.     Apple has had actual knowledge of both Intertrust's rights in the '876 patent and Apple's infringement of the '876 patent since no later than the filing date of this Complaint. In addition, Apple is also aware that Intertrust licensed the '876 patent, among others, to Microsoft in 2004 as part of a $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

86.     Notwithstanding Apple's actual notice of infringement, Apple has continued to manufacture, use, import, offer for sale, or sell the '876 Accused Products with knowledge of or willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '876 patent. Apple has induced and continues to induce others to infringe the '876 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '876 patent with intent that those performing the acts infringe the '876 patent. Upon information and belief, Apple advertises regarding the '876 Accused Products, publishes specifications and promotional literature describing the operation of the '876 Accused Products, creates and/or distributes user manuals for the '876 Accused Products, and offers support and technical assistance to its customers. Consumers of these products then directly or jointly infringe the '876 patent.

87.     Apple knows that the '876 Accused Products are especially made or especially adapted for use in the infringement of the '876 patent. The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '876 patent. Accordingly, Apple is also contributing to the direct infringement of the '876 patent by the consumers of these products.

88.     Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '876 patent.

89.     By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. But for Apple's infringement of the '876 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '876 patent to

Apple so that Apple could implement these products and services.   As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '876 patent.

90.   Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

91.   Apple's infringement of the '876 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

92.   Apple's infringement of the '876 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VI

### (Apple's Infringement of U.S. Patent No. 5,982,891)

93.   Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

94.   Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 5,982,891 ("the '891 patent"), titled "Systems And Methods For Secure Transaction Management And Electronic Rights Protection," duly and legally issued by the United States Patent and Trademark Office on November 9, 1999, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the caption page and claims of the '891 patent is attached hereto as Exhibit 6.  The '891 patent is related to the '900 patent, a complete copy of which is attached hereto as Exhibit 1.  A complete copy of the '891 patent can be made available to the Court upon request.  In addition, a complete copy of the '891 patent will be served on Apple along with this Complaint.

95.   The '891 patent is valid and enforceable.

96.     Apple has infringed and is currently infringing the '891 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods, equipment, and/or services that practice one or more claims of the '891 patent, including but not limited to Apple's iPhone, iPad, iPod touch, MacBook Air, MacBook Pro, Mac mini, iMac, and Mac Pro products (collectively, "the '891 Accused Products").

97.     Apple has had actual knowledge of both Intertrust's rights in the '891 patent and details of Apple's infringement of the '891 patent because Intertrust brought the '891 patent to Apple's attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust licensed the '891 patent, among others, to Microsoft in 2004 as part of a $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

98.     Notwithstanding Apple's actual notice of infringement, Apple has continued to manufacture, use, import, offer for sale, or sell the '891 Accused Products with knowledge of or willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '891 patent.  Apple has induced and continues to induce others to infringe the '891 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '891 patent with intent that those performing the acts infringe the '891 patent. Upon information and belief, Apple advertises regarding the '891 Accused Products, publishes specifications and promotional literature describing the operation of the '891 Accused Products, creates and/or distributes user manuals for the '891 Accused Products, and offers support and technical assistance to its customers.  Consumers of these products then directly or jointly infringe the '891 patent.

99.     Apple knows that the '891 Accused Products are especially made or especially adapted for use in the infringement of the '891 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '891 patent. Accordingly, Apple is also contributing to the direct infringement of the '891 patent by the consumers of these products.

1    100.    Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily

2    practice and/or induce third parties to practice the claims of the '891 patent.

3    101.    By reason of Apple's infringing activities, Intertrust has suffered, and will continue to

4    suffer, substantial damages in an amount to be proven at trial. But for Apple's infringement of the

5    '891 patent, Intertrust would have either provided Apple with the patented Intertrust technology that

6    Apple needed to implement the infringing products and services, or else licensed the '891 patent to

7    Apple so that Apple could implement these products and services. As a result of Apple's

8    infringement, Intertrust has been damaged in an amount equal to the loss of profits that would

9    otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event

10   less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a

11   licensing agreement that includes the '891 patent.

12   102.    Apple's continuing acts of infringement are irreparably harming and causing damage

13   to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such

14   irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court. The

15   hardships that an injunction would impose are less than those faced by Intertrust should an injunction

16   not issue. The public interest would be served by issuance of an injunction.

17   103.    Apple's infringement of the '891 patent has been and continues to be willful and

18   deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

19   104.    Apple's infringement of the '891 patent is exceptional and entitles Intertrust to

20   attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

21                                    **COUNT VII**

22                   **(Apple's Infringement of U.S. Patent No. 6,112,181)**

23   105.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1

24   through 32 of this Complaint as if fully set forth herein.

25   106.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in

26   and to U.S. Patent No. 6,112,181 ("the '181 patent"), titled "Systems And Methods For Matching,

27   Selecting, Narrowcasting, And/Or Classifying Based On Rights Management And/Or Other

28   Information," duly and legally issued by the United States Patent and Trademark Office on August

29, 2000, including the right to bring this suit for injunctive relief and damages. A true and correct copy of the '181 patent is attached hereto as Exhibit 7.

107.    The '181 patent is valid and enforceable.

108.    Apple has infringed and is currently infringing the '181 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods, equipment, and/or services that practice one or more claims of the '181 patent, including but not limited to Apple's iPhone, iPad, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini, iMac, and Mac Pro products, as well as Apple's iTunes Store software applications and/or services (collectively, "the '181 Accused Products").

109.    Apple has had actual knowledge of both Intertrust's rights in the '181 patent and details of Apple's infringement of the '181 patent because Intertrust brought the '181 patent to Apple's attention before the filing date of this Complaint. In addition, Apple is also aware that Intertrust licensed the '181 patent, among others, to Microsoft in 2004 as part of a $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

110.    Notwithstanding Apple's actual notice of infringement, Apple has continued to manufacture, use, import, offer for sale, or sell the '181 Accused Products with knowledge of or willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '181 patent. Apple has induced and continues to induce others to infringe the '181 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '181 patent with intent that those performing the acts infringe the '181 patent. Upon information and belief, Apple advertises regarding the '181 Accused Products, publishes specifications and promotional literature describing the operation of the '181 Accused Products, creates and/or distributes user manuals for the '181 Accused Products, and offers support and technical assistance to its customers. Consumers of these products then directly or jointly infringe the '181 patent.

111.    Apple knows that the '181 Accused Products are especially made or especially adapted for use in the infringement of the '181 patent. The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the

infringing components of these products are a material part of the invention of the '181 patent. Accordingly, Apple is also contributing to the direct infringement of the '181 patent by the consumers of these products.

112.    Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '181 patent.

113.    By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Apple's infringement of the '181 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '181 patent to Apple so that Apple could implement these products and services.  As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '181 patent.

114.    Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

115.    Apple's infringement of the '181 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

116.    Apple's infringement of the '181 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VIII

### (Apple's Infringement of U.S. Patent No. 6,157,721)

117.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

118. Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 6,157,721 ("the '721 patent"), titled "Systems And Methods Using Cryptography To Protect Secure Computing Environments," duly and legally issued by the United States Patent and Trademark Office on December 5, 2000, including the right to bring this suit for injunctive relief and damages. A true and correct copy of the '721 patent is attached hereto as Exhibit 8.

119. The '721 patent is valid and enforceable.

120. Apple has infringed and is currently infringing the '721 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods, equipment, and/or services that practice one or more claims of the '721 patent, including but not limited to Apple's iPhone, iPad, iPod touch, MacBook Air, MacBook Pro, Mac mini, iMac, and Mac Pro products (collectively, "the '721 Accused Products").

121. Apple has had actual knowledge of both Intertrust's rights in the '721 patent and details of Apple's infringement of the '721 patent because Intertrust brought the '721 patent to Apple's attention before the filing date of this Complaint. In addition, Apple is also aware that Intertrust licensed the '721 patent, among others, to Microsoft in 2004 as part of a $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

122. Notwithstanding Apple's actual notice of infringement, Apple has continued to manufacture, use, import, offer for sale, or sell the '721 Accused Products with knowledge of or willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '721 patent. Apple has induced and continues to induce others to infringe the '721 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '721 patent with intent that those performing the acts infringe the '721 patent. Upon information and belief, Apple advertises regarding the '721 Accused Products, publishes specifications and promotional literature describing the operation of the '721 Accused Products, creates and/or distributes user manuals for the '721 Accused Products, and offers support and technical assistance to its customers. Consumers of these products then directly or jointly infringe the '721 patent.

123.    Apple knows that the '721 Accused Products are especially made or especially adapted for use in the infringement of the '721 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '721 patent.  Accordingly, Apple is also contributing to the direct infringement of the '721 patent by the consumers of these products.

124.    Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '721 patent.

125.    By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Apple's infringement of the '721 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '721 patent to Apple so that Apple could implement these products and services.  As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '721 patent.

126.    Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

127.    Apple's infringement of the '721 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

128.    Apple's infringement of the '721 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

1

## COUNT IX

2

**(Apple's Infringement of U.S. Patent No. 6,185,683)**

3    129.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1

4    through 32 of this Complaint as if fully set forth herein.

5    130.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in

6    and to U.S. Patent No. 6,185,683 ("the '683 patent"), titled "Trusted And Secure Techniques, Systems

7    And Methods For Item Delivery And Execution," duly and legally issued by the United States Patent

8    and Trademark Office on February 6, 2001, including the right to bring this suit for injunctive relief

9    and damages.  A true and correct copy of the caption page and claims of the '683 patent is attached

10   hereto as Exhibit 9.  The '683 patent is related to the '900 patent, a complete copy of which is

11   attached hereto as Exhibit 1.  A complete copy of the '683 patent can be made available to the Court

12   upon request.  In addition, a complete copy of the '683 patent will be served on Apple along with this

13   Complaint.

14   131.    The '683 patent is valid and enforceable.

15   132.    Apple has infringed and is currently infringing the '683 patent by making, using,

16   selling, offering for sale, and/or importing into the United States, without authority, products,

17   methods, equipment, and/or services that practice one or more claims of the '683 patent, including but

18   not limited to Apple's iPhone, iPad, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini,

19   iMac and Mac Pro products, as well as Apple's iTunes Store, iBookstore, iOS App Store and Mac

20   App Store software applications and/or services (collectively, "the '683 Accused Products").

21   133.    Apple has had actual knowledge of both Intertrust's rights in the '683 patent and

22   details of Apple's infringement of the '683 patent because Intertrust brought the '683 patent to Apple's

23   attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust

24   licensed the '683 patent, among others, to Microsoft in 2004 as part of a $440 million licensing

25   agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

26   134.    Notwithstanding Apple's actual notice of infringement, Apple has continued to

27   manufacture, use, import, offer for sale, or sell the '683 Accused Products with knowledge of or

28   willful blindness to the fact that its actions will induce Apple's customers and end users to infringe

the '683 patent.  Apple has induced and continues to induce others to infringe the '683 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '683 patent with intent that those performing the acts infringe the '683 patent.  Upon information and belief, Apple advertises regarding the '683 Accused Products, publishes specifications and promotional literature describing the operation of the '683 Accused Products, creates and/or distributes user manuals for the '683 Accused Products, and offers support and technical assistance to its customers.  Consumers of these products then directly or jointly infringe the '683 patent.

135.     Apple knows that the '683 Accused Products are especially made or especially adapted for use in the infringement of the '683 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '683 patent.  Accordingly, Apple is also contributing to the direct infringement of the '683 patent by the consumers of these products.

136.     Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '683 patent.

137.     By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Apple's infringement of the '683 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '683 patent to Apple so that Apple could implement these products and services.  As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '683 patent.

138.     Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and Intertrust will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The

hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue. The public interest would be served by issuance of an injunction.

139. Apple's infringement of the '683 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

140. Apple's infringement of the '683 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT X

### (Apple's Infringement of U.S. Patent No. 6,253,193)

141. Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

142. Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 6,253,193 ("the '193 patent"), entitled "Systems And Methods For Secure Transaction Management And Electronic Rights Protection," duly and legally issued by the United States Patent and Trademark Office on June 26, 2001, including the right to bring this suit for injunctive relief and damages. A true and correct copy of the caption page and claims of the '193 patent is attached hereto as Exhibit 10. The '193 patent is related to the '900 patent, a complete copy of which is attached hereto as Exhibit 1. A complete copy of the '193 patent can be made available to the Court upon request. In addition, a complete copy of the '193 patent will be served on Apple along with this Complaint.

143. The '193 patent is valid and enforceable.

144. Apple has infringed and is currently infringing the '193 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods, equipment, and/or services that practice one or more claims of the '193 patent, including but not limited to Apple's iPhone, iPad, iPod, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini, iMac and Mac Pro products, as well as Apple's iTunes Store, iBookstore, and iOS App Store software applications and/or services (collectively, "the '193 Accused Products").

145. Apple has had actual knowledge of both Intertrust's rights in the '193 patent and details of Apple's infringement of the '193 patent because Intertrust brought the '193 patent to Apple's

1    attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust

2    licensed the '193 patent, among others, to Microsoft in 2004 as part of a $440 million licensing

3    agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

4         146.    Notwithstanding Apple's actual notice of infringement, Apple has continued to

5    manufacture, use, import, offer for sale, or sell the '193 Accused Products with knowledge of or

6    willful blindness to the fact that its actions will induce Apple's customers and end users to infringe

7    the '193 patent.  Apple has induced and continues to induce others to infringe the '193 patent in

8    violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple

9    knows to be acts of infringement of the '193 patent with intent that those performing the acts infringe

10   the '193 patent.  Upon information and belief, Apple advertises regarding the '193 Accused Products,

11   publishes specifications and promotional literature describing the operation of the '193 Accused

12   Products, creates and/or distributes user manuals for the '193 Accused Products, and offers support

13   and technical assistance to its customers.  Consumers of these products then directly or jointly

14   infringe the '193 patent.

15        147.    Apple knows that the '193 Accused Products are especially made or especially adapted

16   for use in the infringement of the '193 patent.  The infringing components of these products are not

17   staple articles or commodities of commerce suitable for substantial non-infringing use, and the

18   infringing components of these products are a material part of the invention of the '193 patent.

19   Accordingly, Apple is also contributing to the direct infringement of the '193 patent by the consumers

20   of these products.

21        148.    Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily

22   practice and/or induce third parties to practice the claims of the '193 patent.

23        149.    By reason of Apple's infringing activities, Intertrust has suffered, and will continue to

24   suffer, substantial damages in an amount to be proven at trial.  But for Apple's infringement of the

25   '193 patent, Intertrust would have either provided Apple with the patented Intertrust technology that

26   Apple needed to implement the infringing products and services, or else licensed the '193 patent to

27   Apple so that Apple could implement these products and services.  As a result of Apple's

28   infringement, Intertrust has been damaged in an amount equal to the loss of profits that would

otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '193 patent.

150. Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue. The public interest would be served by issuance of an injunction.

151. Apple's infringement of the '193 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

152. Apple's infringement of the '193 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT XI

### (Apple's Infringement of U.S. Patent No. 7,392,395)

153. Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

154. Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 7,392,395 ("the '395 patent"), entitled "Trusted And Secure Techniques, Systems And Methods For Item Delivery And Execution," duly and legally issued by the United States Patent and Trademark Office on June 24, 2008, including the right to bring this suit for injunctive relief and damages. A true and correct copy of the caption page and claims of the '395 patent is attached hereto as Exhibit 11. The '395 patent is related to the '900 patent, a complete copy of which is attached hereto as Exhibit 1. A complete copy of the '395 patent can be made available to the Court upon request. In addition, a complete copy of the '395 patent will be served on Apple along with this Complaint.

155. The '395 patent is valid and enforceable.

156. Apple has infringed and is currently infringing the '395 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products,

methods, equipment, and/or services that practice one or more claims of the '395 patent, including but not limited to Apple's iPhone, iPad, iPod touch, MacBook Air, MacBook Pro, Mac mini, iMac, and Mac Pro products, as well as Apple's iOS App Store and Mac App Store software applications and/or services (collectively, "the '395 Accused Products").

157.    Apple has had actual knowledge of both Intertrust's rights in the '395 patent and details of Apple's infringement of the '395 patent because Intertrust brought the '395 patent to Apple's attention before the filing date of this Complaint. In addition, Apple is also aware that Intertrust licensed the '683 patent, a sister of the '395 patent, among others, to Microsoft in 2004 as part of a $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge Armstrong.

158.    Notwithstanding Apple's actual notice of infringement, Apple has continued to manufacture, use, import, offer for sale, or sell the '395 Accused Products with knowledge of or willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '395 patent. Apple has induced and continues to induce others to infringe the '395 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '395 patent with intent that those performing the acts infringe the '395 patent. Upon information and belief, Apple advertises regarding the '395 Accused Products, publishes specifications and promotional literature describing the operation of the '395 Accused Products, creates and/or distributes user manuals for the '395 Accused Products, and offers support and technical assistance to its customers. Consumers of these products then directly or jointly infringe the '395 patent.

159.    Apple knows that the '395 Accused Products are especially made or especially adapted for use in the infringement of the '395 patent. The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '395 patent. Accordingly, Apple is also contributing to the direct infringement of the '395 patent by the consumers of these products.

160.    Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '395 patent.

161.    By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Apple's infringement of the '395 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '395 patent to Apple so that Apple could implement these products and services.  As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '395 patent.

162.    Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

163.    Apple's infringement of the '395 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

164.    Apple's infringement of the '395 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT XII

### (Apple's Infringement of U.S. Patent No. 7,734,553)

165.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

166.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 7,734,553 ("the '553 patent"), entitled "Systems And Methods Using Cryptography To Protect Secure Computing Environments," duly and legally issued by the United States Patent and Trademark Office on June 8, 2010, including the right to bring this suit for

1   injunctive relief and damages.  A true and correct copy of the caption page and claims of the '553

2   patent is attached hereto as Exhibit 12.  The '553 patent is related to the '721 patent, a complete copy

3   of which is attached hereto as Exhibit 8.  A complete copy of the '553 patent can be made available to

4   the Court upon request.  In addition, a complete copy of the '553 patent will be served on Apple along

5   with this Complaint.

6       167.    The '553 patent is valid and enforceable.

7       168.    Apple has infringed and is currently infringing the '553 patent by making, using,

8   selling, offering for sale, and/or importing into the United States, without authority, products,

9   methods, equipment, and/or services that practice one or more claims of the '553 patent, including but

10  not limited to Apple's iPhone, iPad, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini,

11  iMac, and Mac Pro products (collectively, "the '553 Accused Products").

12      169.    Apple has had actual knowledge of both Intertrust's rights in the '553 patent and

13  details of Apple's infringement of the '553 patent because Intertrust brought the '553 patent to Apple's

14  attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust

15  licensed the '721 patent, the parent of the '553 patent, among others, to Microsoft in 2004 as part of a

16  $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge

17  Armstrong.

18      170.    Notwithstanding Apple's actual notice of infringement, Apple has continued to

19  manufacture, use, import, offer for sale, or sell the '553 Accused Products with knowledge of or

20  willful blindness to the fact that its actions will induce Apple's customers and end users to infringe

21  the '553 patent.  Apple has induced and continues to induce others to infringe the '553 patent in

22  violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple

23  knows to be acts of infringement of the '553 patent with intent that those performing the acts infringe

24  the '553 patent.  Upon information and belief, Apple advertises regarding the '553 Accused Products,

25  publishes specifications and promotional literature describing the operation of the '553 Accused

26  Products, creates and/or distributes user manuals for the '553 Accused Products, and offers support

27  and technical assistance to its customers.  Consumers of these products then directly or jointly

28  infringe the '553 patent.

171.    Apple knows that the '553 Accused Products are especially made or especially adapted for use in the infringement of the '553 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '553 patent. Accordingly, Apple is also contributing to the direct infringement of the '553 patent by the consumers of these products.

172.    Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '553 patent.

173.    By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Apple's infringement of the '553 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '553 patent to Apple so that Apple could implement these products and services.  As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '553 patent.

174.    Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

175.    Apple's infringement of the '553 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

176.    Apple's infringement of the '553 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

COMPLAINT FOR PATENT INFRINGEMENT

1

## COUNT XIII

2

**(Apple's Infringement of U.S. Patent No. 7,761,916)**

3      177.   Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1

4   through 32 of this Complaint as if fully set forth herein.

5      178.   Intertrust is the current exclusive owner and assignee of all right, title, and interest in

6   and to U.S. Patent No. 7,761,916 ("the '916 patent"), entitled "Systems And Methods Using

7   Cryptography To Protect Secure Computing Environments," duly and legally issued by the United

8   States Patent and Trademark Office on July 20, 2010, including the right to bring this suit for

9   injunctive relief and damages.  A true and correct copy of the caption page and claims of the '916

10  patent is attached hereto as Exhibit 13.  The '916 patent is related to the '721 patent, a complete copy

11  of which is attached hereto as Exhibit 8.  A complete copy of the '916 patent can be made available to

12  the Court upon request.  In addition, a complete copy of the '916 patent will be served on Apple along

13  with this Complaint.

14      179.   The '916 patent is valid and enforceable.

15      180.   Apple has infringed and is currently infringing the '916 patent by making, using,

16  selling, offering for sale, and/or importing into the United States, without authority, products,

17  methods, equipment, and/or services that practice one or more claims of the '916 patent, including but

18  not limited to Apple's iPhone, iPad, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini,

19  iMac, and Mac Pro products, as well as Apple's iOS App Store and Mac App Store software

20  applications and/or services (collectively, "the '916 Accused Products").

21      181.   Apple has had actual knowledge of both Intertrust's rights in the '916 patent and

22  details of Apple's infringement of the '916 patent because Intertrust brought the '916 patent to Apple's

23  attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust

24  licensed the '721 patent, the parent of the '916 patent, among others, to Microsoft in 2004 as part of a

25  $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge

26  Armstrong.

27      182.   Notwithstanding Apple's actual notice of infringement, Apple has continued to

28  manufacture, use, import, offer for sale, or sell the '916 Accused Products with knowledge of or

willful blindness to the fact that its actions will induce Apple's customers and end users to infringe the '916 patent. Apple has induced and continues to induce others to infringe the '916 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple knows to be acts of infringement of the '916 patent with intent that those performing the acts infringe the '916 patent. Upon information and belief, Apple advertises regarding the '916 Accused Products, publishes specifications and promotional literature describing the operation of the '916 Accused Products, creates and/or distributes user manuals for the '916 Accused Products, and offers support and technical assistance to its customers. Consumers of these products then directly or jointly infringe the '916 patent.

183. Apple knows that the '916 Accused Products are especially made or especially adapted for use in the infringement of the '916 patent. The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '916 patent. Accordingly, Apple is also contributing to the direct infringement of the '916 patent by the consumers of these products.

184. Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily practice and/or induce third parties to practice the claims of the '916 patent.

185. By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. But for Apple's infringement of the '916 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '916 patent to Apple so that Apple could implement these products and services. As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '916 patent.

186. Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such

1   irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court. The

2   hardships that an injunction would impose are less than those faced by Intertrust should an injunction

3   not issue. The public interest would be served by issuance of an injunction.

4         187.    Apple's infringement of the '916 patent has been and continues to be willful and

5   deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

6         188.    Apple's infringement of the '916 patent is exceptional and entitles Intertrust to

7   attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

8   <u>**COUNT XIV**</u>

9   **(Apple's Infringement of U.S. Patent No. 8,191,157)**

10         189.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1

11   through 32 of this Complaint as if fully set forth herein.

12         190.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in

13   and to U.S. Patent No. 8,191,157 ("the '157 patent"), entitled "Systems And Methods For Secure

14   Transaction Management And Electronic Rights Protection," duly and legally issued by the United

15   States Patent and Trademark Office on May 29, 2012. A true and correct copy of the caption page

16   and claims of the '157 patent is attached hereto as Exhibit 14. The '157 patent is related to the '900

17   patent, a complete copy of which is attached hereto as Exhibit 1. A complete copy of the '157 patent

18   can be made available to the Court upon request. In addition, a complete copy of the '157 patent will

19   be served on Apple along with this Complaint.

20         191.    The '157 patent is valid and enforceable.

21         192.    Apple has infringed and is currently infringing the '157 patent by making, using,

22   selling, offering for sale, and/or importing into the United States, without authority, products,

23   methods, equipment, and/or services that practice one or more claims of the '157 patent, including but

24   not limited to Apple's iPhone, iPad, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini,

25   iMac, and Mac Pro products (collectively, "the '157 Accused Products").

26         193.    Apple has had actual knowledge of both Intertrust's rights in the '157 patent and

27   Apple's infringement of the '157 patent since no later than the filing date of this Complaint. In

28   addition, Apple is also aware that Intertrust licensed the '891 and '193 patents, sisters of the '157

1   patent, among others, to Microsoft in 2004 as part of a $440 million licensing agreement that

2   resolved the *Microsoft* actions pending before Judge Armstrong.

3       194.    Notwithstanding Apple's actual notice of infringement, Apple continues to

4   manufacture, use, import, offer for sale, or sell the '157 Accused Products with knowledge of or

5   willful blindness to the fact that its actions will induce Apple's customers and end users to infringe

6   the '157 patent. Apple has induced and continues to induce others to infringe the '157 patent in

7   violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple

8   knows to be acts of infringement of the '157 patent with intent that those performing the acts infringe

9   the '157 patent. Upon information and belief, Apple advertises regarding the '157 Accused Products,

10  publishes specifications and promotional literature describing the operation of the '157 Accused

11  Products, creates and/or distributes user manuals for the '157 Accused Products, and offers support

12  and technical assistance to its customers. Consumers of these products then directly or jointly

13  infringe the '157 patent.

14      195.    Apple knows that the '157 Accused Products are especially made or especially adapted

15  for use in the infringement of the '157 patent. The infringing components of these products are not

16  staple articles or commodities of commerce suitable for substantial non-infringing use, and the

17  infringing components of these products are a material part of the invention of the '157 patent.

18  Accordingly, Apple is also contributing to the direct infringement of the '157 patent by the consumers

19  of these products.

20      196.    Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily

21  practice and/or induce third parties to practice the claims of the '157 patent.

22      197.    By reason of Apple's infringing activities, Intertrust has suffered, and will continue to

23  suffer, substantial damages in an amount to be proven at trial. But for Apple's infringement of the

24  '157 patent, Intertrust would have either provided Apple with the patented Intertrust technology that

25  Apple needed to implement the infringing products and services, or else licensed the '157 patent to

26  Apple so that Apple could implement these products and services. As a result of Apple's

27  infringement, Intertrust has been damaged in an amount equal to the loss of profits that would

28  otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event

1    less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a

2    licensing agreement that includes the '157 patent.

3          198.    Apple's continuing acts of infringement are irreparably harming and causing damage

4    to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such

5    irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court.  The

6    hardships that an injunction would impose are less than those faced by Intertrust should an injunction

7    not issue.  The public interest would be served by issuance of an injunction.

8          199.    Apple's infringement of the '157 patent has been and continues to be willful and

9    deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

10          200.    Apple's infringement of the '157 patent is exceptional and entitles Intertrust to

11    attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

12                                        **COUNT XV**

13                      **(Apple's Infringement of U.S. Patent No. 8,191,158)**

14          201.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1

15    through 32 of this Complaint as if fully set forth herein.

16          202.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in

17    and to U.S. Patent No. 8,191,158 ("the '158 patent"), entitled "Systems And Methods For Secure

18    Transaction Management And Electronic Rights Protection," duly and legally issued by the United

19    States Patent and Trademark Office on May 29, 2012, including the right to bring this suit for

20    injunctive relief and damages.  A true and correct copy of the caption page and claims of the '158

21    patent is attached hereto as Exhibit 15.  The '158 patent is related to the '900 patent, a complete copy

22    of which is attached hereto as Exhibit 1.  A complete copy of the '158 patent can be made available to

23    the Court upon request.  In addition, a complete copy of the '158 patent will be served on Apple along

24    with this Complaint.

25          203.    The '158 patent is valid and enforceable.

26          204.    Apple has infringed and is currently infringing the '158 patent by making, using,

27    selling, offering for sale, and/or importing into the United States, without authority, products,

28    methods, equipment, and/or services that practice one or more claims of the '158 patent, including but

1  not limited to Apple's iPhone, iPad, iPod touch, Apple TV, MacBook Air, MacBook Pro, Mac mini,

2  iMac, and Mac Pro products (collectively, "the '158 Accused Products").

3       205.   Apple has had actual knowledge of both Intertrust's rights in the '158 patent and

4  details of Apple's infringement of the '158 patent because Intertrust brought the '158 patent to Apple's

5  attention before the filing date of this Complaint.  In addition, Apple is also aware that Intertrust

6  licensed the '891 and '193 patents, sisters of the '158 patent, among others, to Microsoft in 2004 as

7  part of a $440 million licensing agreement that resolved the *Microsoft* actions pending before Judge

8  Armstrong.

9       206.   Notwithstanding Apple's actual notice of infringement, Apple has continued to

10  manufacture, use, import, offer for sale, or sell the '158 Accused Products with knowledge of or

11  willful blindness to the fact that its actions will induce Apple's customers and end users to infringe

12  the '158 patent.  Apple has induced and continues to induce others to infringe the '158 patent in

13  violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Apple

14  knows to be acts of infringement of the '158 patent with intent that those performing the acts infringe

15  the '158 patent.  Upon information and belief, Apple advertises regarding the '158 Accused Products,

16  publishes specifications and promotional literature describing the operation of the '158 Accused

17  Products, creates and/or distributes user manuals for the '158 Accused Products, and offers support

18  and technical assistance to its customers.  Consumers of these products then directly or jointly

19  infringe the '158 patent.

20       207.   Apple knows that the '158 Accused Products are especially made or especially adapted

21  for use in the infringement of the '158 patent.  The infringing components of these products are not

22  staple articles or commodities of commerce suitable for substantial non-infringing use, and the

23  infringing components of these products are a material part of the invention of the '158 patent.

24  Accordingly, Apple is also contributing to the direct infringement of the '158 patent by the consumers

25  of these products.

26       208.   Apple is not licensed or otherwise authorized by Intertrust to practice, contributorily

27  practice and/or induce third parties to practice the claims of the '158 patent.

28

209. By reason of Apple's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. But for Apple's infringement of the '158 patent, Intertrust would have either provided Apple with the patented Intertrust technology that Apple needed to implement the infringing products and services, or else licensed the '158 patent to Apple so that Apple could implement these products and services. As a result of Apple's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Apple, but in no event less than a reasonable royalty based in part on the $440 million paid in 2004 by Microsoft for a licensing agreement that includes the '158 patent.

210. Apple's continuing acts of infringement are irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Apple's continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue. The public interest would be served by issuance of an injunction.

211. Apple's infringement of the '158 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

212. Apple's infringement of the '158 patent is exceptional and entitles Intertrust to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. A judgment that Apple has infringed each and every one of the Asserted Patents;

B. A preliminary and permanent injunction against Apple, its respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from infringement, inducement of infringement, and contributory infringement of each and every one of the Asserted Patents, including but not limited to an injunction against making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, any products and/or services that infringe the Asserted Patents;

1        C.      Lost profit damages resulting from Apple's infringement of the Asserted Patents;

2        D.      A reasonable royalty for Apple's use of Intertrust's patented technology, as alleged

3 herein;

4        E.      prejudgment interest; and

5        F.      post-judgment interest;

6        G.      A judgment holding Apple's infringement of the Asserted Patents to be willful, and a

7 trebling of damages pursuant to 35 U.S.C. § 284;

8        H.      A declaration that this Action is exceptional pursuant to 35 U.S.C. § 285, and an award

9 to Intertrust of its attorneys' fees, costs and expenses incurred in connection with this Action; and

10       I.      Such other relief as the Court deems just and equitable.

11

12 DATED:  March 20, 2013          Respectfully submitted,

13

14                  By: _____

Robert P. Feldman

15                      Linda J. Brewer

16                      Frederick A. Lorig

QUINN EMANUEL URQUHART & SULLIVAN, LLP

17                     *Attorneys for Plaintiff Intertrust Technologies Corp.*

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT

1

**DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury

3    on all matters and issues triable by jury.

4

5    DATED:  March 20, 2013                    Respectfully submitted,

6

7                                             By:_____
                                                  Robert P. Feldman
8                                                 Linda J. Brewer
                                                  Frederick A. Lorig
9                                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP

10                                                *Attorneys for Plaintiff Intertrust Technologies Corp.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT