[COUNSEL LISTED ON SIGNATURE PAGE]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTERTRUST TECHNOLOGIES CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO.  4:13-cv-01235-YGR<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  December 16, 2013<br>Time:  2:00 p.m.<br>Courtroom 5, 2nd Floor<br>Honorable Yvonne Gonzalez Rogers |

Pursuant to this Court's Civil Local Rule 16-10(d), the parties jointly submit this Joint Case Management Statement to update their Initial Joint Case Management Statement (D.I. 32), submitted by the parties on August 19, 2013, and offer their proposals for the remainder of the case.

**I.**        **Jurisdiction and Service.**

*See* Joint Case Management Statement (D.I. 32).

**II.**        **Facts.**

The Court entered the Joint Scheduling Order (D.I. 38) on August 30, 2013. *See also* Joint Case Management Statement (D.I. 32).

**III.**        **Legal Issues.**

*See* Joint Case Management Statement (D.I. 32).

**IV.**        **Motions.**

Intertrust filed a Motion For Leave to Amend its Infringement Contentions on December 3, 2013 to include new products that Apple has released since Intertrust served its original contentions on September 9, 2013 and to make non-substantive corrections and clarifications.  Apple will serve its response to this motion by December 17, 2013, and Intertrust will serve its reply by December 24, 2013.  Intertrust noticed the hearing on this motion for January 7th at 2:00 p.m. or as soon thereafter as the matter may be heard.  Additional motions may be filed as the case progresses.

**V.**        **Amendment of Pleadings.**

Intertrust filed its Reply to Defendant Apple Inc.'s Counterclaim (D.I. 33) on August 22, 2013. The deadline for amending pleadings is set forth in the parties' proposed schedules provided in Section XVII below at item No. 24.

**VI.**        **Evidence Preservation.**

The parties conducted their Rule 26(f) conference on August 5, 2013.  The conference was attended by lead counsel for each party.  The parties have reviewed the ESI Guidelines, and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. During the Rule 26(f) meeting, the parties discussed the items identified in the Court's Checklist For Rule 26(f) Meet And Confer Regarding Electronically Stored Information.  The parties are continuing

to negotiate a proposed procedural and ESI stipulation that they expect to submit to the Court upon completion.

**VII.**       **Disclosures.**

The parties served their Initial Disclosures on August 19, 2013.  Intertrust served its First Amended Initial Disclosures on November 8, 2013.

**VIII.**       **Discovery.**

A.       Discovery Taken To Date.

The parties have each served their respective first set of requests for the production of documents and things.  Apple served its first set of interrogatories to Intertrust, and Intertrust served its first and second sets of interrogatories to Apple.  The parties have served their responses to these first sets of written discovery and are meeting and conferring regarding the same.  Apple's responses to Intertrust's second set of interrogatories are due, by extension, on December 16, 2013.

B.       Limitations On Discovery.

The parties agree that at depositions that require an interpreter, there shall be an official interpreter hired by the side taking the deposition.  The parties further reserve the right to hire their own interpreter to verify the translation by the official interpreter.  The parties propose the following limits for discovery:

***Depositions***

*Standard:* 10 depositions (Fed. R. Civ. Proc. 30(a)(2), 31(a)(2)).

*Proposed*:  150 hours of total deposition time for each side (*i.e.*, 150 hours for Intertrust and 150 hours for Apple) with a 7-hour limit for individual, non-inventor depositions.  The parties will negotiate in good faith regarding whether a 7-hour limit is appropriate for 30(b)(6) and inventor depositions. The amount of actual individual, inventor, 30(b)(6), and third-party deposition time shall count against the total time, but expert depositions will not.  Depositions requiring an interpreter count as half time.

***Interrogatories***

*Standard*: 25 interrogatories (Fed. R. Civ. Proc. 33(a)(1)).

*Requests For Admission*

*Standard*: No limit in Fed. R. Civ. Proc.

*Proposal*: 100 requests for admission per party; requests for admission of the authenticity of a document do not count against the limit.

C.    Discovery of ESI.

During their Rule 26(f) conference, and on subsequent occasions, the parties discussed preservation, collection and production of ESI.  The parties are continuing discussions regarding ESI and expect to enter into an ESI stipulation addressing preservation, collection, and production of ESI.

D.    Protective Order.

The parties filed a Joint Motion to Enter Proposed Stipulated Protective Order.  (D.I. 42).  On November 1, 2013, the Court denied the motion without prejudice because it was "based on the previous version of this District's Model Protective Order, which was superseded on October 1, 2013." (D.I. 43).  In accordance with the Court's instructions, the parties filed an amended Proposed Stipulated Protective Order on November 25, 2013.  (D.I. 46).  Until such time as the Court rules on the parties' request, the parties are operating by agreement under the Proposed Stipulated Protective Order (D.I. 46).  Pending finalization of a Stipulated Protective Order, the parties agree not to withhold documents without timely seeking an appropriate Protective Order from the Court.

E.    Privilege And Privilege Logs.

The parties are in discussions on, and will enter into, a stipulation regarding appropriate procedures with respect to privilege logs.  The parties shall have the right to claw back inadvertently produced privileged or work-product documents.  The parties expect to reach additional agreements regarding privilege logs as part of the Procedural and ESI Stipulation, which the parties are continuing to negotiate.

F.    Expert Discovery.

The parties have filed a Proposed Stipulated Protective Order (D.I. 46) that includes a stipulation limiting the discovery of expert materials.  The parties will meet and confer to set reasonable limits on expert deposition time.

G.      Phased Discovery.

The only phasing of discovery that the parties currently propose is as described in their respective proposed schedules in Section XVII regarding expert discovery.

**IX.      Class Actions**

*See* Joint Case Management Statement (D.I. 32).

**X.      Related Cases**

*See* Joint Case Management Statement (D.I. 32).

**XI.      Relief**

*See* Joint Case Management Statement (D.I. 32).

**XII.      Settlement And ADR.**

The parties filed their ADR Certifications on August 23, 2013.  (D.I. 34, 35).  The parties have agreed as part of the required ADR rules to engage in ADR discussions and select an appropriate ADR process under the ADR stipulation, at a time and date that is mutually acceptable to both parties. Currently, the Court has vacated all dates for filing and service of the ADR certification and ADR stipulation required by the ADR rules.

***Intertrust's Proposal***:  The Hon. Ronald M. Whyte, Senior District Judge of this district, successfully mediated the predecessor cases, pending before the Hon. Saundra Brown Armstrong, that Intertrust brought against Microsoft.  *Intertrust Technologies Corp. v. Microsoft Corp.*, Case Nos. 01-cv-1640-SBA and 02-cv-0647-SBA ("the *Microsoft* Actions").  All but one of the patents-at-issue in the present case were asserted in the *Microsoft* Actions or are continuations of the patents asserted in the *Microsoft* Actions.  Judge Armstrong previously construed 32 claim terms during the Microsoft Actions.  As the Court requested at the Initial Case Management Conference, a copy of that ruling is attached as Exhibit A.  Once Apple has identified which of Judge Armstrong's claim interpretations it wishes to contest, and the Court has resolved any claim interpretation issues in this case, Intertrust believes that Judge Whyte or another jointly accepted mediator may be able to successfully mediate this case with Apple just as Judge Whyte did the cases with Microsoft.

As discussed below in Section XV, Intertrust has offered a proposal that will reasonably narrow the number of asserted claims by over 80% before the *Markman* hearing.  As Apple has itself

argued, Intertrust's portfolio of patents covers the digital rights management system used in all of its products, which was exactly the situation in the *Microsoft* Actions that were settled shortly after Judge Armstrong's *Markman* ruling.

**Apple's Proposal**:  The present case is distinct from the *Microsoft* Actions, which were settled nearly ten years ago.  For example, the  Apple products accused in this case are very different from the products accused in the *Microsoft* Actions and Intertrust is presently asserting 126 claims[1] and 13 patents that were not at issue in the *Microsoft* Actions.  Apple believes the parties will be in a better position to engage in ADR discussions and work together to select a mutually-agreeable ADR procedure once the scope of the case has been clarified through identification of a reasonable number of asserted claims.

**XIII.    <u>Consent to Magistrate Judge for All Purposes</u>**

*See* Joint Case Management Statement (D.I. 32).

**XIV.    <u>Other References</u>**

*See* Joint Case Management Statement (D.I. 32).

**XV.    <u>Narrowing Of Issues.</u>**

***Intertrust's Statement***

Pursuant to the Court's Joint Scheduling Order entered on August 30, 2013, Intertrust served its Patent Local Rule 3-1 and 3-2 Disclosure of Asserted Claims and Infringement Contentions asserting that Apple infringed 163 claims from the 23 asserted patents identified in the Complaint. *See* D.I. 38 at ¶ 1.  At the initial Case Management Conference, Intertrust informed the Court that Apple and Intertrust could work together to narrow the number of asserted claims based on a review of both Apple's source code and Apple's invalidity contentions under Patent Local Rule 3-3 and 3-4. *See*, *e.g.*, Aug. 26, 2013 Tr. at 6:6-9 ("once we have the source code from the local rule 3-4 exchange and your invalidity contentions, I'm sure we'll be able to reduce this thing down to something that we can either discuss together or present to the court"); *id.* at 10:6-9 ("I think once we've gotten their 3-3

---

[1] If allowed, Intertrust's proposed amendment to its infringement contentions would bring that number to 130 claims.

1   and 3-4 disclosures, we've had a chance to look at the source code for the accused device, we will be

2   able to -- to simplify this.").

3       The Court ordered Apple to make an initial production of source code (the "Initial Source

4   Code Production") by October 8, 2013, but deferred the deadline for Apple to produce any additional

5   source code and documents required under Patent L.R. 3-4(a) until a date to be set by the Court at the

6   upcoming Case Management Conference.  *See* D.I. 38 at ¶ 3 ("Apple will produce source code

7   sufficient to show the operation of any aspects or elements identified by Intertrust in its Patent Local

8   Rule 3-1(c) chart for the iPad, iPod, iPhone, and Mac OS X products, the iTunes Store, iOS App

9   Store, and Mac App Store with which said devices interact, and the code effecting Apple's receipt,

10  processing, and distribution of Apps and other content, no later than **October 8, 2013.**").  Similarly,

11  the Court ordered Apple to make a good faith production of all potentially relevant currently known

12  prior art in Apple's possession by no later than December 9th, 2013, but indicated that the Court

13  would set the date for production of Apple's invalidity contentions and any subsequently located prior

14  art under Patent Local Rule 3-3 and 3-4(b) at this next Case Management Conference.  *See* D.I. 38 at ¶

15  5.

16      Now, nearly two months after the court-ordered deadline, Apple's Initial Source Code

17  Production remains incomplete.  Intertrust has been diligently reviewing Apple's source code that was

18  first made available on October 8, 2013 at the offices of Apple's counsel in Palo Alto, CA, and

19  beginning on October 17, 2003 at the offices of Apple's counsel in New York, NY.  Since these dates,

20  Intertrust has regularly staffed the five source code review computers at those locations.  Intertrust has

21  identified to Apple significant portions of relevant source code that were omitted from Apple's Initial

22  Source Code Production, and the parties have been meeting and conferring to resolve these issues.

23  Intertrust's requests have been for missing source code that is needed to show the operation of aspects

24  or elements identified by Intertrust in its Patent Local Rule 3-1(c) claim charts for the subset of

25  accused products that are specified in the Joint Scheduling Order.  In an attempt to resolve these

26  source code omissions, Apple has made numerous additional productions since October 8th, including

27  a substantial supplemental production of code on November 21 and 22, 2013, that Intertrust is still

28  reviewing.  Apple has agreed to further supplement its source code production.

1        To be in a position to make rational, informed decisions that would potentially narrow the

2  case, Intertrust also sought the early good faith production of all potentially relevant currently known

3  prior art in Apple's possession.  Apple did not begin a rolling production of this art until November 1,

4  2013.  Apple also provided its initial responses to Intertrust's interrogatory seeking Apple's non-

5  infringement contentions.  These responses, however, are incomplete in that they only recite the

6  language of individual claim limitations that Apple believes are not infringed without any explanation

7  of why Apple believes its accused products do not satisfy the requirements of the asserted claims.

8        Understandably, Intertrust has found Apple's still incomplete source code production, its

9  ongoing production of prior art, and its incomplete non-infringement responses to be of little

10  assistance in furthering Intertrust's efforts to narrow the asserted claims.  Nevertheless, Intertrust's

11  lead counsel reached out to Apple's lead counsel  before  the Thanksgiving holiday and offered to

12  reduce the number of asserted patents and claims if Apple would stipulate to a dismissal without

13  prejudice of the patents and claims not selected.  Apple's lead counsel, on instructions from his client,

14  declined that offer.  Although Intertrust is still in the process of reviewing Apple's source code,

15  including the  substantial amount of code that was produced in the last two weeks, Intertrust advised

16  Apple that it was prepared to narrow this case using the same procedure Apple successfully urged on

17  Judge Koh in the *Apple v. Samsung* case (*i.e.*, a dismissal without prejudice of asserted patents and

18  patent claims to streamline the case for trial).  Intertrust's proposed case schedule, set forth in full

19  below in Section XVII and modeled on (1) Judge Koh's orders in *Apple v. Samsung* where Apple is

20  the plaintiff patentee, and (2) the Federal Circuit Advisory Council's Model Order Limiting Excess

21  Patent Claims and Prior Art, provides for a reasonable and timely reduction in both the number of

22  asserted claims and the number of asserted prior art references.  For example, Intertrust's proposal

23  provides a procedure for significantly reducing the number of claims at issue from the present 163 to

24  30 by mid-March 2014:

25        &bull;  Following a Court order permitting the dismissal of Intertrust's non-selected asserted

26            patents and patent claims and all of Apple's parallel declaratory relief counterclaims

27            without prejudice to being raised in any future action filed by Intertrust, by January 6,

28            2014, Intertrust shall select and identify 60 asserted claims from no more than 13

patents to go forward with in this action, and dismiss without prejudice the remaining asserted claims identified in its infringement contentions that have not been selected for litigation in this case.

- On February 5, 2014, Apple shall serve its Patent Local Rule 3-3 invalidity contentions and complete production of its Patent Local Rule 3-4 disclosures for the 60 selected claims.

- On February 19, 2014, Apple shall supplement its response to Intertrust's interrogatory No. 1 to provide explanations as to why Apple does not infringe the 60 selected claims.

- On March 12, 2014, Intertrust shall further limit its case by dismissing another 30 claims without prejudice, leaving 30 claims at issue during the claim construction proceedings.

Although rejected by Apple, who has demanded dismissals with prejudice (at least in part), Intertrust's proposed schedule is contingent on any dismissals of its property rights being done without prejudice, including safeguards that would (1) allow for tolling of the six year time limitation on damages (35 U.S.C. § 286); (2) preclude Apple from arguing that the assertion of a dismissed patent claim in a future action constitutes claim splitting because other claims from the same patent continued to be litigated in this action; and (3) preclude Apple from arguing that any reasonable delay between the dismissal date and the filing of a future action involving these dismissed patents or claims (i.e., the subsequent case is filed within a year of the final judgment in the present action) is a basis for a waiver, laches, and/or estoppel defense in that action. Dismissal without prejudice, as was done on Apple's initiative in the *Apple v. Samsung* cases, is particularly appropriate at this early stage when discovery has just begun and Apple has yet to serve its invalidity contentions (and has not provided more than a superficial response to Intertrust's non-infringement interrogatory). Indeed, the Federal Circuit has warned "[i]t is also conceivable that a claim selection order could come too early in the discovery process, denying the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses." *In re Katz*, 639 F.3d at 1313 n.9. If the Court agrees that dismissal without

prejudice is warranted, the parties can then meet and confer on a stipulation dismissing claims and counterclaims without prejudice.

Intertrust has met and conferred with Apple regarding a case narrowing process that would involve dismissing the non-selected patents and claims without prejudice.  Apple has indicated that it believes a portion of any dismissals of patents or claims should be with prejudice, regardless of the stage of the case.  Apple's position as a defendant in this case is flatly inconsistent with the position it has taken as a plaintiff patentee in other cases in this district.  For example, in *Apple Inc. v. Samsung Elecs.*, Case 5:11-cv-01846-LHK, Apple advocated that any dismissals of its own patent claims on the *eve of trial* should be done *without prejudice*:

> There is no justification whatsoever that supports granting [defendant] a free license to patents that are too numerous to survive the jury trial narrowing process. Dismissing those claims with prejudice would deprive Apple of due process. *See In Re Katz Intractive Call Processing Litig.*, 639 F.3d 1303, 1311 (Fed. Cir. 2011)…As Apple noted, should this Court be inclined to refuse Apple's separate trial request, the appropriate action would be to dismiss these claims without prejudice.

*See Id.,* D.I. 910-1 at p. 1.  Judge Koh adopted Apple's proposal, over Samsung's objections, and ordered that any of the parties' claims that will not be tried would be dismissed without prejudice.  *See id.*, D.I. 912.  Apple has been unable to provide a reasonable explanation why the rule it successfully sought to be applied after the close of discovery in *Apple v. Samsung* should not be applied here, in a case still in the earliest stages of discovery.

Not only is Apple's position in this case 180 degrees from the position it took when it was plaintiff, but also contrary to the position Apple's counsel took in the *Medtronic* case they purport to rely upon:

> Courts have recognized the unfairness of requiring reduction of claims before the accused infringer provides its position on non-infringement and invalidity and have therefore ordered claim reduction after the defendant provides these contentions. For example, in *Masimo Corp. v. Philips Electronics North America Corp.*, the court required the patentee to reduce the number of asserted claims *after* the accused infringer provided its invalidity contentions because the patentee "will not be modifying the number of asserted claims blindly." --- F. Supp. 2d ---, No. 09-80-LPSMPT, 2013 WL 258964, at *5 (D. Del. Jan. 23, 2013). Similarly, in *High Point Sarl v. Sprint Nextel Corp.*, the court denied the defendant's motion to reduce the 125 asserted claims because the "discovery cut-off is not imminent, and it would be premature to limit the number of claims plaintiff may assert at this time," and further set a deadline for "Defendants' disclosure of Preliminary Non-Infringement, Unenforceability, and Invalidity Contentions." No. 09-2269-CM-DJW, 2010 WL

1    1292710, at *3 (D. Kan. Mar. 29, 2010). Likewise here, MiniMed should not have to
2    blindly reduce its asserted claims before Animas responds to MiniMed's infringement
     contentions.

3    *See* Exhibit B (Plaintiff's Opposition to Defendant's Motion to Reduce the Number of Asserted
4    Claims, *Medtronic Minimed Inc. et al. v. Animas Corp.,* D.I. 25 at *3-4, CV 12-04471 RSWL (C.D.
5    Cal. 2013)).

6          Apple's Statement below fails to recognize that Intertrust has proposed to significantly narrow
7    this case  by dismissing without prejudice ten patents and more than 100 claims before Apple's
8    compliance with its Patent Local Rule 3-3 or 3-4 obligations.  Apple mischaracterizes Intertrust's
9    proposal as allowing it to "freely re-assert dropped claims without good cause."  Rather, Intertrust's
10   proposal would initially require it to voluntarily drop at least 103 infringed claims that could only be
11   re-asserted, if at all, in a second action in the unlikely event a decision on this case does not lead to
12   settlement.  The likelihood of such a second action is extremely small.  Intertrust's proposal, in the
13   interests of efficiency and resolving this case in a speedy manner, also does not provide a mechanism
14   for re-asserting in this case any of the claims that are dropped in the second narrowing step (i.e., from
15   60 to 30 claims), either by substitution or addition (as allowed for by the Federal Circuit in *In re Katz*).
16   In return for this concession, Intertrust merely requests that it be allowed to consider Apple's Patent
17   Local Rule disclosures and substantive non-infringement process as part of the narrowing process.

18         Apple has identified no cases in which a court has ruled that a plaintiff's voluntarily dismissal
19   of its infringed patents at this early stage of litigation should be with prejudice.  Both of the cases that
20   Apple relies on – *In re Katz*  and *Stamps.com, Inc. v. Endicia, Inc.,* 437 F. App'x 897, 902-03 (Fed.
21   Cir. Aug. 1, 2011) – involved narrowing at much later stages of the cases, and after plaintiffs failed to
22   make the requisite showing that the excluded claims were not duplicative.  Indeed, Apple's proposal is
23   at odds with *In re Katz*, because by requiring Intertrust to dismiss 133 claims without Apple first
24   providing its Patent Local Rule disclosures, it would deny Intertrust  the "opportunity to determine
25   whether particular claims might raise separate issues of infringement or invalidity in light of the
26   defendants' accused products and proposed defenses." *See* 639 F.3d at 1313 n.9.  *Stamps.com*, is not
27   to the contrary, insofar as the Federal Circuit merely agreed that it was within the district court's

28

1  authority to limit the number of asserted claims, not that the claims should be limited at any particular

2  point in the litigation or with prejudice. *Stamps.com*, 2011 WL 2417044 at *3.

3      The narrowing process proposed by Intertrust that begins prior to service of invalidity

4  contentions with further narrowing before claim construction provides for a reasonable and timely

5  reduction in the number of asserted claims. *See In Re Katz*, 639 F.3d 1303, 1313 n.9 (Fed. Cir. 2011)

6  (warning that narrowing of claims could be done too early); *Adobe Sys. Inc. v. Wowza Media Sys.*

7  *LLC*, Case 3:11-cv-02243, N.D. Cal. May 6, 2013 Order (Judge Tigar ordered no reduction of claims

8  until after both fact and expert discovery were complete);  *Robert Bosch Healthcare Sys., Inc. v.*

9  *Express MD Solutions*, Case No. 12-00068, N.D. Cal. Oct. 22, 2012 Order (Judge White refused to

10 limit the number of claims prior to claim construction and discovery); *Classen Immunotherapies v.*

11 *Biogen Idec*, 2013 WL 680379 (D. Md. 2013) (reducing from 228 claims to 30 within 15 days after

12 the court issued its *Markman* ruling);  *SPH America, LLC v. High Tech Computer Corp.*, Case No.

13 3:08-cv-02146, S.D. Cal. March 4, 2009 Order (refusing to order patentee to reduce the number of

14 asserted claims below 253); *Dataquill Ltd. V. High Tech Computer Corp.*, Case No. 3:08-cv-00543,

15 S.D. Cal. March 16, 2011 (refusing to limit the number of claims where discovery was ongoing);

16 *Microunity Sys. Eng'g, Inc. v. Apple Inc.*, Case No. 2:10-cv-00091, E.D. Tex. June 7, 2012 Order

17 (refusing to limit the number of claims prior to claim construction).

18      Moreover, Intertrust's voluntary narrowing process is distinguishable from Apple's cited

19 authority that imposed claim reductions on an unwilling plaintiff only upon a fully briefed and noticed

20 motion.  Nevertheless, these cases do not support Apple's proposal.  For example, in *Thought, Inc. v.*

21 *Oracle Corp., et al,* 12-cv-05601-WHO at *2 (N.D. Cal. Oct. 10, 2013), it was only *after* the parties

22 have "exchanged infringement and invalidity contentions, their proposed claim constructions, as well

23 as "core" technological documents" the court required narrowing to ten claims per patent (and no more

24 than 32 claims total).  Intertrust's proposal, on the other hand, would require narrowing through

25 dismissals without prejudice to an average of fewer than five claims per patent *before* Apple even

26 would be required to serve its invalidity contentions.  Intertrust's approach is also generally consistent

27 with the other district court cases own which Apple relies.  *See  Software Rights,* No. 12-CV-3970

28 RMW (N.D. Cal. Feb. 15, 2013) (after a fully briefed motion, Judge Whyte limited to ten claims per

patent before invalidity responses); *Medtronic Minimed Inc. et al. v. Animas Corp.,* 2013 WL 3322248, CV 12-04471 RSWL (C.D. Cal. April 5, 2013) (after a fully briefed motion, narrowing to four claims per patent in advance of invalidity contentions); *Network Protection Sciences, LLC v. Fortinet, Inc.,* 2013 WL 1949051 (N.D. Cal. May 9, 2013) (defendant represented by Quinn Emanuel provided invalidity contentions for 50 claims from a *single patent*, and Judge Alsup only criticized plaintiff (but did not limit claims) after it opposed a motion to amend those contentions).

Intertrust's proposal is also consistent with Federal Circuit Advisory Committee Model Order that Apple advocated for at the Initial Case Management Conference.  The Model Order does not require any narrowing until 40 days after the defendant completes production of its Patent Local 3-4(a) disclosures.  If the Model Order is applied to Apple's proposed schedule, Intertrust's initial narrowing would not occur until the beginning of  April 2014.  Apple's proposal, on the other hand, would require that Intertrust dismiss 133 asserted claims without prejudice in the next 4 weeks.

Finally, Apple's cases also impose far more severe prior art restrictions on the defendant than Apple is proposing here.  Apple's first prior art limitation would only require it to narrow its invalidity case to 90 total references by early April 2014, a far more lax requirement than what those cases allowed.  *See Software Rights,* No. 12-CV-3970 RMW (N.D. Cal. Feb. 15, 2013) (Judge Whyte limiting defendant to four anticipatory references and four obvious combinations before service of invalidity contentions); *Thought, Inc. v. Oracle Corp., et al,* 12-cv-05601-WHO at *2 (N.D. Cal. Oct. 10, 2013) (Judge Orrick limiting to 50 total prior art references before claim construction).

### *Apple's Statement*

At the previous case management conference, the Court set a procedure for the parties to work together towards narrowing the case.  (Dkt. No. 38, ¶¶ 3-5.)  Apple produced its source code and prior art references to Intertrust pursuant to the Court's Order, to facilitate a meaningful meet and confer between the parties to reduce the number of claims and patents in the case.  This involved a significant effort by Apple to collect and produce a massive amount of highly-sensitive source code within a very

short timeframe.[2]  Apple also has produced the prior art references it is currently aware of through a rolling production that began over a month in advance of the December 9 date set in the Court's Order.  In short, Apple upheld its end of the bargain from the initial CMC, producing what Intertrust previously claimed it needed in order to substantially narrow the claims.[3]

Intertrust did not meaningfully comply with the Court's Order to meet and confer with Apple regarding narrowing issues in the case.  (*Id.*, ¶ 4.)  Instead, Intertrust waited until December 4—nearly a month after the date set by the Court and only three business days before the due date for this statement—to even suggest a specific future mechanism for narrowing the case.  As a result, Apple has not had a reasonable opportunity to attempt to work cooperatively with Intertrust to resolve this issue and must once again ask the Court for assistance to narrow the case in a reasonable manner (if the Court prefers that this request be made by motion, Apple would be happy to do so).

Intertrust is presently asserting infringement of more than 163 claims in 23 patents against essentially all of Apple's products.  The parties appear to agree that the case should be narrowed to no more than 30 asserted claims before claim construction proceedings.  The disagreement arises in connection with Intertrust's demands that it be permitted to drop and re-introduce claims and patents without any restriction, causing Apple to face protracted and repeated litigation over the same patent portfolio rather than a single streamlined proceeding that would permit the parties to resolve their disputes rather than multiply them.  Intertrust also seeks to shift to Apple the burden of analyzing a large number of claims before Intertrust narrows down to a more reasonable number.  Apple believes

---

[2]   Intertrust's complaint that Apple has continued producing source code after the October 8 date set by the Court is misleading.  The Court directed Apple to produce source code "sufficient to show the operation of any aspects or elements identified by Intertrust in its Patent Local Rule 3-1(c) chart for" a subset of accused products.  (Dkt. No. 38, ¶ 3.)  Following Apple's October 8 production, Intertrust sent Apple a series of requests for additional source code and materials (with no explanation of how these requests relate to features accused in Intertrust's contentions).  Although Apple was not required to produce materials beyond the scope of the Court's Order, Apple has nevertheless produced additional source code (and continues to do so) in an effort to accommodate Intertrust and avoid unnecessary disputes.

[3]   Intertrust contends that it has confirmed through its 1,300 hours of source code review that all of its asserted claims are infringed, but it has not supplemented its contentions with any of the source code bases for its infringement assertions.  Without infringement contentions that include the source code traces that Intertrust will rely upon, the parties cannot even begin to evaluate other case-narrowing mechanisms such as representative products or source code versions.

1    that the parties should work together to streamline the case, but that any meaningful progress will

2    require Intertrust to make decisions that focus as opposed to expand the scope of this case.

3        Intertrust already has Apple's source code and the prior art references currently known to

4    Apple.  The appropriate next step is for Intertrust to use this accelerated production to focus its case on

5    a reduced set of claims (*e.g.*, 30 claims, more than double the number that will ultimately be asserted

6    at trial), and to provide updated contentions that include source-code-level detail, so that Intertrust's

7    specific allegations in this case can be understood.  To the extent a legitimate need arises for Intertrust

8    to re-introduce any dropped claims, Apple believes it is appropriate to apply a "good cause" standard

9    similar to the standard for amending infringement contentions so that Apple can meaningfully rely on

10   narrowing in its preparation of its defenses.

11            A.    <u>Intertrust Should Not be Permitted to Freely Re-Assert Dropped Claims
                          Without Good Cause.</u>

12

13       The Federal Circuit has expressly rejected Intertrust's position that claims should not be

14   dismissed with prejudice as part of the narrowing process.  *See In re Katz Interactive Call Processing*

15   *Patent Litig.,* 639 F.3d 1303, 1312-13 (Fed. Cir. 2011) (affirming district court's denial of plaintiff's

16   request to pursue claims that were not selected during narrowing process); *Stamps.com, Inc. v.*

17   *Endicia, Inc.,* 437 F. App'x 897, 902-03 (Fed. Cir. Aug. 1, 2011) (same).  Indeed, the Federal Circuit

18   upheld narrowing that began at an earlier stage than this case, where Intertrust already had the benefit

19   of extensive  source code discovery—the plaintiff in *Katz* was required to "select no more than 40

20   claims per defendant group, and after discovery to narrow the number of selected claims to 16 per

21   defendant group."  *See  Katz,* 639 F.3d at 1309.  Any alleged hardship to Intertrust or potential

22   "surprises" later in the case are addressed by allowing Intertrust to seek leave to re-introduce dropped

23   claims based upon a showing that good cause exists for a need to assert such claims.  *See In re Katz,*

24   639 F.3d at 1312-13; *Stamps.com,* 437 F. App'x at 902-03.

25       In line with the Federal Circuit's holding, numerous District Court decisions have imposed

26   mandatory narrowing of asserted claims under this "good cause" standard.  *See, e.g., Thought, Inc. v.*

27   *Oracle Corp., et al,* 12-cv-05601-WHO, 2013 WL 5587559, at *3 (N.D. Cal. Oct. 10, 2013) (directing

28   that plaintiff "may move the Court to allow it to bring back in unselected claims for good cause,

showing that specific unselected claims raise unique questions of invalidity or infringement in light of recently secured discovery, the Court's Claim Construction, etc."); *Software Rights Archive, LLC v. Facebook, Inc.,* No. 12-CV-3970 RMW, p. 2 (N.D. Cal. Feb. 15, 2013) (Ex. C) (noting that plaintiff would have an "opportunity to amend its infringement contentions . . . upon a showing of good cause"). This same standard is also adopted in the Federal Circuit Advisory Committee and Eastern District of Texas Model Orders regarding claim narrowing.[4] (Ex. D, ¶5) ("Any request to increase the limits contained in this order must specifically show why the inclusion of additional asserted claims or prior art references is warranted"); (Ex. E, ¶5) ("post-entry motions to modify this Order's numerical limits on asserted claims and prior art references must demonstrate good cause warranting the modification.") Apple proposes that narrowing of the asserted claims in this case should follow this well-established procedure.

Intertrust's dismissal-without-prejudice proposal, to allow dropped claims to be freely re-asserted later, would lead to the same waste and duplication that narrowing is intended to avoid—it merely spreads out these problems among multiple lawsuits and results in protracted litigation of related issues. Indeed, Intertrust demands an exemption to the prohibition against "claim splitting" so that it can maintain multiple lawsuits against Apple on the very same patents involved in this case. Intertrust also insists on exemptions from laches and damages limitations, thus opening the door for an endless stream of duplicative litigation. Apple filed counterclaims on each of the asserted patents to ensure that all of the parties' disputes are resolved in this litigation, rather than having Intertrust seek settlement leverage with the specter of never-ending duplicative litigation.

The Northern District of California recently recognized that separating an unmanageable case into multiple parts is not a proper approach for narrowing asserted claims:

> Finally, the Court notes that [plaintiff's] proposed bifurcation – splitting its seven patents into two totally separate litigation phases – is neither more fair to the parties nor more efficient for the Court. Requiring two separate tracks for claim construction, fact and expert discovery, and trial will only require more resources from the parties and the Court.

---

[4]   The timing of narrowing (to 32 asserted claims) under the Federal Circuit Model Order is the same as in this case: "after the accused infringer is required to produce documents sufficient to show the operation of the accused instrumentalities." (Ex. D, ¶2.)

*See Thought,* 2013 WL 5587559, at *5 (N.D. Cal. Oct. 10, 2013).  The same reasoning applies here.  Dismissing without prejudice, as Intertrust proposes, will merely generate even more unnecessary, duplicative litigation down the road.   And there is no basis for Intertrust to receive "bonus" exemptions that maximize its ability to engage in such duplication.

Nor is Intertrust's inefficient proposal justified by its various complaints about Apple's source code.  As an initial matter, Apple has produced over 60 gigabytes of source code.  Intertrust's attorneys and consultants have already logged approximately 1,300 hours reviewing Apple's source code.  It cannot be seriously disputed that Intertrust now has very detailed and comprehensive information about operation of Apple's products.  In any case, even if Intertrust is still lacking some stray piece of source code that turns out to be relevant, this is addressed by Apple's proposal to allow dropped claims to be re-introduced for good cause shown.

Intertrust is also incorrect that its positions are supported by the *Apple v. Samsung* litigation pending before Judge Koh.[5]  The Apple/Samsung war is the rarest exception and not the rule, and far from the dispute present here.  The specific Apple v. Samsung case cited by Intertrust is a part of a uniquely-complex dispute between the two largest competitors in the mobile device space.  As Apple explained in its submissions to Judge Koh, the patents being dropped in that case involved distinct features from the patents remaining in the litigation.  (Ex. F at 4.)  Apple even offered to drop its damages demand for patents dismissed without prejudice and to seek only injunctive relief to protect the product-differentiating features unique to those patents.  (*Id.*)  In contrast, Intertrust does not compete with Apple and has stated several times that its objective is to obtain a monetary payment from Apple.  This issue can be litigated on the merits through assertion of a reasonable number of

---

[5]   It bears noting that the quotes Intertrust cites out of context are only from one of the several Apple/Samsung cases pending in front of Judge Koh, and that there are numerous other cases pending in the United States International Trade Commission, the Netherlands, the United Kingdom, Spain, Italy, France, Germany, Japan, Korea, and Australia, in the multi-faceted legal battle between these two competitors.

1  claims.[6]  This court should follow the great weight precedent that rejects the notion of dismissals

2  without prejudice, and reject Intertrust's invitation to equate this case with the very different

3  Apple/Samsung matter.

4          B.       Intertrust Should Not be Permitted to Unreasonably Burden Apple with
                    Analyzing an Inflated Set of Claims.

5

6          Courts have also rejected Intertrust's position that claims cannot be narrowed to a reasonable

7  number before invalidity contentions and detailed non-infringement contentions are provided.  *See*

8  *Medtronic Minimed Inc. et al. v. Animas Corp.,* CV 12-04471 RSWL, 2013 WL 3322248, at *2 (C.D.

9  Cal. April 5, 2013) (refusing to require defendant to do invalidity and non-infringement contentions

10 before narrowing, "knowing full well that the vast majority of those contentions will become moot

11 upon Plaintiffs' reduction of claims shortly thereafter"); *Software Rights,* No. 12-CV-3970 RMW, pgs.

12 2-3 (N.D. Cal. Feb. 15, 2013) (Ex. C) (limiting to 30 asserted claims "in advance of the [] deadline for

13 service of invalidity contentions"); *Network Protection Sciences, LLC v. Fortinet, Inc.,* 2013 WL

14 1949051, at *2 (N.D. Cal. May 9, 2013) (criticizing patentee for imposing "a bone-crushing burden of

15 conducting a prior art search for more than fifty patent claims," which were later narrowed to fifteen

16 claims).[7]  Intertrust now has access to Apple's source code and to the prior art references currently

17 known to Apple.  This provides sufficient information for Intertrust to perform any analysis needed

18 for narrowing its claims.

19         In essence, Intertrust's proposal seeks to shift to Apple the work of analyzing the claims and

20 figuring out their relative weaknesses to assist Intertrust in determining which ones to drop.  Intertrust

21 already has access to the same source code and same prior art references that Apple would analyze to

22 generate non-infringement and invalidity contentions.  It is unfair to force Apple to do Intertrust's job

23 of analyzing a large number of claims for non-infringement and invalidity in view of these materials

24     [6]    Apple requested in its interrogatories that Intertrust identify what alleged value and/or
25 damages it believes are associated with each of the asserted patents.  Intertrust has refused to provide
   any such breakdown.

26     [7]    None of the decisions cited by Intertrust hold that a defendant should provide invalidity
27 contentions and/or non-infringement contentions before narrowing occurs.  In any case, Intertrust
   will have an opportunity to consider Apple's invalidity and non-infringement positions (*i.e.,* for 30
   asserted claims) while narrowing down to the smaller subset of claims that will be asserted at trial.

28

for purposes of deciding which claims to assert.  Intertrust presumably already knows which claims it is most likely to pursue based on its approximately 1,300 hours of review of Apple source code; the logical next step is for Intertrust to narrow its claims and provide updated contentions that include source-code-level detail.[8]  It makes little sense to force Apple to address an arbitrarily-inflated number of claims and then see much of its work immediately go to waste when Intertrust announces which claims are being dropped.

It should also be noted that narrowing to thirty claims still allows Intertrust more than double the number of claims that will ultimately be pursued at trial.  This provides more than adequate flexibility for Intertrust to leave itself breathing room to account for further developments later in the litigation.

Accordingly, Apple proposes that the appropriate next step in the litigation is for Intertrust to narrow down to thirty asserted claims and provide updated contentions identifying the source code traces that will form the basis for its infringement assertions (as set forth in the proposed schedule in Section XVII below).  This will allow the litigation to proceed in a more manageable fashion through invalidity contentions and claim construction.

**XVI.     Expedited Trial Procedure**

*See* Joint Case Management Statement (D.I. 32).

**XVII.    Schedule.**

The parties propose the following respective schedules:

---

[8]    *See, e.g., See Big Baboon Corp. v. Amazon Inc.,* 723 F.Supp.2d 1224, 1227-29 (C.D. Cal. 2010) (holding that infringement contentions must be updated with "pinpoint citations" to accused source code).

| | Case Event | Apple's Proposed Deadline | Intertrust's Proposed Deadline |
|---|---|---|---|
| 1. | First Interim Limit on Asserted Claims | 6-Jan-14<br><br>No more than 30 claims (all limits without prejudice to substituting claims later for good cause) | 6-Jan-14<br><br>No more than 60 claims from no more than 13 patents (all non-asserted patent and claim dismissals without prejudice) |
| 2. | Supplementation of Intertrust's Patent L.R. 3-1, 3-2 Disclosure of Asserted Claims and Infringement Contentions (for the asserted claims only) | 6-Jan-14<br><br>Infringement contentions must be supplemented to include citations source code produced by Apple | Not Required |
| 3. | Patent L.R. 3-3 Invalidity Contentions | 20-Feb-14<br>45 days after first interim limit on asserted claims | 5-Feb-14 |
| 4. | Patent L.R. 3-4 Document Production | 20-Feb-14 | 5-Feb-14 |
| 5. | Supplementation of Apple's Response to Intertrust's Interrogatory No. 1 (for the remaining asserted claims only) | 13-Mar-14<br><br>Contingent upon supplementation of Intertrust infringement contentions | 19-Feb-14 |
| 6. | Patent L.R. 4-1 Exchange of Proposed Terms for Construction | 20-Mar-14 | 5-Mar-14 |
| 7. | Second Interim Limit on Asserted Claims | N.A. | 12-Mar-14<br><br>No more than 30 claims (all non-asserted claim dismissals without prejudice) |
| 8. | Patent L.R. 4-2 Exchange of Preliminary Constructions and Extrinsic Evidence | 2-Apr-14 | 26-Mar-14 |

| 9. | First Interim Limit on Prior Art | 9-Apr-14<br><br>No more than 4 references per remaining independent claim and no more than 90 references total (each reference or combination of references counts as one reference) | 2-Apr-14<br><br>No more than 4 references per remaining independent claim and no more than 90 references total (each reference or combination of references counts as one reference) |
|---|---|---|---|
| 10. | Motion to Construe More Than 10 Claim Terms<br>YGR Standing Order For Patent Cases ¶ 4 | 11-Apr-14 | 4-Apr-14 |
| 11. | Patent L.R. 4-3 Joint Claim Construction and Prehearing Statement and Disclosure of Expert Declarants | 24-Apr-14 | 18-Apr-14 |
| 12. | Patent L.R. 4-4 Close of Claim Construction Discovery | 26-May-14 | 19-May-14 |
| 13. | Patent L.R. 4-5 Opening Claim Construction Brief and Expert Declaration(s) (if any) | 9-Jun-14 | 2-Jun-14 |
| 14. | Last day to depose Opening Expert Declarant(s) | 23-Jun-14 | 16-Jun-14 |
| 15. | Patent L.R. 4-5 Responsive Claim Construction Brief (Apple) and Expert Declaration (if any) | 7-Jul-14 | 23-Jun-14 |
| 16. | Last day to depose Responsive Expert Declarants (if any) | 21-Jul-14 | 7-Jul-14 |
| 17. | Patent L.R. 4-5 Reply Brief (Intertrust) | 28-Jul-14 | 14-Jul-14 |
| 18. | Tutorial<br>YGR Standing Order For Patent Cases ¶ 7 | 13-Aug-14 | 25-Jul-14 |
| 19. | Patent L.R. 4-6 Claim Construction Hearing | 20-Aug-14 | 1-Aug-14 |
| 20. | Second Case Management Conference<br>YGR Standing Order For Patent Cases ¶ 13 | To be determined by the Court | To be determined by the Court |

| 21. | Second/Third Interim Limit on Asserted Claims | 15 days after claim construction ruling<br><br>No more than 15 claims (all limits without prejudice to substituting claims later for good cause) | 15 days after claim construction ruling<br><br>No more than 20 claims (all non-asserted claim dismissals without prejudice) |
|---|---|---|---|
| 22. | Second Interim Limit on Prior Art | 30 days after claim construction ruling<br><br>No more than 4 references per remaining independent claim and no more than 60 references total (each reference or combination of references counts as one reference) | 30 days after claim construction<br><br>No more than 4 references per remaining independent claim and no more than 60 references total (each reference or combination of references counts as one reference) |
| 23. | Patent L.R. 3-7 Disclosure re Advice of Counsel | 50 days after claim construction ruling. | 50 days after claim construction ruling. |
| 24. | Deadline for Amending Pleadings | 60 days after claim construction  ruling | 60 days after claim construction  ruling |
| 25. | Close of Fact Discovery | 90 days after claim construction ruling | 75 days after claim construction ruling |
| 26. | Deadline to File Motions to Compel | 14 days after close of fact discovery | 14 days after close of fact discovery |
| 27. | Opening Expert Reports | 45 days after close of fact discovery | 45 days after close of fact discovery |
| 28. | Rebuttal Expert Reports | 45 days after opening expert reports | 45 days after opening expert reports |
| 29. | Close of Expert Discovery | 45 days after rebuttal expert reports | 45 days after rebuttal expert reports |
| 30. | Final Limit on Asserted Claims | 15 days after claim construction ruling<br><br>No more than 10 claims | *See below* |

| 31. | Final/Third Interim Limitation of Prior Art | 14 days after close of expert discovery – no more than 3 references per remaining independent claim and no more than 24 references total (each reference or combination of references counts as one reference) | 12 days after close of expert discovery – no more than 3 references per remaining independent claim and no more than 40 references total (each reference or combination of references counts as one reference) |
|---|---|---|---|
| 32. | Last Day to File Summary Judgment Motions | 45 days after close of expert discovery | 30 days after close of expert discovery |
| 33. | Final Limitation of Claims | *See above* | 14 days before Pretrial Conference - no more than 12 claims |
| 34. | Final Limitation of Prior Art | *See above* | 7 days before Pretrial Conference - 2 references per remaining independent claim and no more than 24 references total (each reference or combination of references counts as one reference) |
| 35. | Pretrial Conference | To be determined by the Court | To be determined by the Court |
| 36. | Trial | To be determined by the Court | To be determined by the Court |

## XVIII.    Trial.

Intertrust has demanded a jury trial for its claims and Apple has demanded a jury trial for its counterclaims. If both parties' claims are tried in a single proceeding, a 15-day (trial days) trial may be required.

### XIX.    Disclosure of Non-Party Interested Entities

*See* Joint Case Management Statement (D.I. 32).

### XX.    Other Matters.

Patent Local Rule 2-1(a) requires the parties to meet and confer on the following additional topics:

    **a.**      **Proposed modification of the obligations or deadlines set forth in the Patent Local Rules to ensure that they are suitable for the circumstances of the particular case; and**

    **b.**      **The scope and timing of any claim construction discovery including disclosure of and discovery from expert witnesses.**

The parties' proposed schedules addresses the Patent Local Rules and the timing of claim construction discovery.

    **c.**      **The format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing.**

The parties do not envision presenting live witness testimony during the hearing.

***Intertrust's Statement***

Intertrust proposes 1 day for the Claim Construction Hearing, with 1/2 day per side.

***Apple's Statement***

Given the number and voluminous specifications of the asserted Intertrust patents, Apple cannot reasonably approximate the time that will be needed for a claim construction hearing.  Apple acknowledges the Court's standard approach of allowing no longer than three hours for claim construction hearing and construing no more than ten terms.  (8/6/12 Standing Order, ¶¶ 3, 12.)  Apple has proposed (in paragraph VIII above) narrowing the disputed issues in the case in advance of claim construction.  However, even with such narrowing, it may be necessary to seek modifications to the Court's standard approach.

    **d.**      **How the parties intend to educate the Court on the technology at issue.**

The parties propose to have a technology tutorial with time split evenly between Intertrust and Apple.

    **e.**      **Service of Documents**

The parties agree to service by email, with delivery of lengthy exhibits accompanying Court filings that are not otherwise served via the Court's ECF system by posting the documents on an FTP site.  Service executed in the foregoing manner will be considered  "actual delivery" under Civil Local Rule 5-5(a)(1) and will be treated as hand service under Fed. R. Civ. P. 5(b)(2)(A) on the day that the documents are emailed or posted on an FTP site.  The parties are currently negotiating an ESI

1   Agreement, and have already submitted for the Court's approval a case-specific Amended Stipulated

2   Protective Order (D.I. 46) to address production of documents and things in this case.

3   DATED: December 9, 2013         Respectfully submitted,

4                                   QUINN EMANUEL URQUHART & SULLIVAN

5                                   By:  */s/ Frederick A. Lorig*_____

6                                   Robert P. Feldman (Bar No. 69602)
7                                   bobfeldman@quinnemanuel.com
                                    Linda J. Brewer (Bar No. 217730)
8                                   lindabrewer@quinnemanuel.com
                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
9                                   555 Twin Dolphin Drive, 5th Floor
                                    Redwood Shores, CA  94065
10                                  Telephone: (650) 801-5000
                                    Facsimile: (650) 801-5100

11                                  Frederick A. Lorig (Bar No. 57645)
12                                  fredericklorig@quinnemanuel.com
                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
13                                  865 S. Figueroa Street, 10th Floor
                                    Los Angeles, CA  90017
14                                  Telephone: (213) 443-3000
                                    Facsimile: (213) 443-3100

15                                  *Attorneys for Plaintiff Intertrust Technologies Corp.*

16

17  DATED: December 9, 2013         Respectfully submitted,

18                                  KIRKLAND & ELLIS

19                                  By:  */s/ Marcus E. Sernel*_____

20                                  Gregory S. Arovas, P.C.
21                                  KIRKLAND & ELLIS LLP
                                    601 Lexington Avenue
22                                  New York, New York  10022
                                    greg.arovas@kirkland.com
23                                  Telephone:  (212) 446-4800
                                    Facsimile:  (212) 446-4900
24

25                                  Marcus E. Sernel, P.C.
                                    KIRKLAND & ELLIS LLP
26                                  300 North LaSalle Street
                                    Chicago, Illinois  60654
27                                  marc.sernel@kirkland.com
                                    Telephone:  (312) 862-2000
28

1    Facsimile:  (312) 862-2200

2    Sarah E. Piepmeier, SBN 227094
     KIRKLAND & ELLIS LLP
3    555 California Street
     San Francisco, California  94104
4    sarah.piepmeier@kirkland.com
     Telephone: (415) 439-1976
5    Facsimile: (415) 439-1500

6
     *Attorneys for Apple Inc.*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, James Stein, am the ECF user whose ID and password are being used to file the parties' Joint Case Management Statement.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Frederick A. Lorig and Marcus E. Sernel have concurred in this filing.


Dated:  December 9, 2013                    _/s/ James Stein_____
                                            James Stein